THE FIRST NATIONAL BANK OF BALTIMORE, Garnishee
of W. B. LOUNSBURY *vs.* JOSEPH F. JAGGERS.

*Misnomer—Attachment—Bankrupt Act—Evidence—
What are not the Wages or Hire of an Employé in
the hands of his Employer.*

Where a party is sued by a wrong name, and the writ is served on the
party intended to be sued, and he fails to appear and plead the misno-
mer in abatement, and suffers judgment to be obtained by default
against him in the erroneous name, he is concluded, and execution
may be issued on the judgment in that name and levied upon the prop-
erty and effects of the real defendant.

An attachment on judgment, issued "instead of any other execution,"
against the lands, tenements, goods, chattels, or credits of the defend-
ant, as authorized by Article 10, section 30, of the Code of Public
General Laws, is a final and not a mesne process; and such process
does not fall within the operation of the 14th section of the Bankrupt
Act of the United States.

L, as the agent of the Ætna Life Insurance Company, kept an account
in the First National Bank of Baltimore in the name of the Com-
pany, and made deposits to its credit and drew checks thereon from
time to time under a power of attorney for that purpose from the Com-
pany. J, having recovered a judgment against L, and supposing that
a part of the money so deposited really belonged to L, caused an at-
tachment, by way of execution, to be laid in the hands of the bank.
The writ was served on the cashier, who finding no account on the
books of the bank in the name of L, and considering that the attach-
ment could not affect the account of the Insurance Company, pleaded
*nulla bona.* Subsequently he received notice from the counsel of J
that the attachment was intended to cover all moneys and credits of
L in the bank, either in his own name or as agent, or trustee, or in the
name of the Ætna Life Insurance Company. HELD :

1st. That J, under the attachment against L, could not recover for any
funds to the credit of the Insurance Company which the bank had
paid over to it after attachment laid, but before notice that such funds
were designed to be affected by the writ.

2d. That the bank account kept by L in the name of the Ætna Life In-
surance Company, of which he was agent, was admissible in evidence,
it being accompanied with a tender of further proof to show that a

portion of the money to the credit of the Insurance Company in the account in fact belonged to L.

3d. That no part of the funds in the bank which may have been proved to belong to L could be regarded as the wages or hire of an employé in the hands of his employer, so as to be exempt from attachment under section 36, Article 10, of the Code of Public General Laws.

APPEAL from the Superior Court of Baltimore City.

*First Exception:* The plaintiff proved by the cashier of the garnishee that an account was kept in the bank in the name of the Ætna Life Insurance Company by W. B. Lounsbury, who made the deposits and drew the checks, and then presented a copy of said account to the witness (objection thereto as a copy being waived) and offered to prove that the same was a copy of the account referred to, and accompanied said offer with a tender to show that a portion of the moneys to the credit of the Insurance Company in said account belonged in fact to Lounsbury. To the admissibility in evidence of said account the garnishee objected, but the Court overruled the objection and allowed the witness to prove the same. To this ruling the garnishee excepted.

*Second Exception:* The plaintiff further proved by the cashier, through whom the attachment was served upon the bank on the 27th of April, 1867, that he considered the attachment against William B. Lounsbury to be against W. B. Lounsbury, and to bind anything he had in bank, that being the only name by which he knew the defendant, and that he did not take into consideration his first name at all. The garnishee objected to the admissibility and competency of this evidence, but the Court overruled the objection and admitted the evidence, stating at the same time that the testimony was admissible as part of the witness' narrative and explanatory of his action in the matter, but not as evidence of the identity of

William B. Lounsbury with W. B. Lounsbury. To this ruling of the Court, the garnishee excepted.

*Third Exception:* The garnishee asked the Court to instruct the jury as follows:

1. That the plaintiff is not entitled to recover, unless they find from the evidence that William B. Lounsbury has or had at the time, or since the issuing of the attachment in this cause, goods, chattels or credits, in the hands of the garnishee, and that the attachment in this cause cannot affect any goods, chattels or credits of Wales B. Lounsbury, that are or were in the hands of the garnishee, and there is no evidence in the cause from which it is competent for the jury to find that Wales B. Lounsbury and William B. Lounsbury are the same person.

2. That there is no evidence in the cause from which it is competent for the jury to find that William B. Lounsbury at any time had, or now has any credit in the hands of the garnishee liable to attachment in this cause, and therefore the plaintiff cannot recover.

3. If the jury should find from the evidence, that at or after the issuing of the attachment in this cause, the garnishee had funds in its hands, standing in the name, and to the credit of the Ætna Life Insurance Company, the plaintiff is not entitled to recover, even although they may also believe that said Ætna Life Insurance Company owed Wales B. Lounsbury sums of money for commissions, which the said Lounsbury had a right to pay himself, out of the funds of the company, in the hands of the garnishee.

4. If the jury find the facts as set forth in the preceding prayer, and should further find that the garnishee paid over said funds to the Ætna Life Insurance Company before it had notice that said funds were the credits designed to be affected by said attachment, then as to any interest the said Lounsbury had in such funds as were paid over

by the garnishee before such notice, the plaintiff cannot recover.

5. That if the jury find that Wales B. Lounsbury, on the 27th of February, 1868, applied for the benefit of the Act of Congress, entitled "An Act to establish a uniform system of bankruptcy throughout the United States, approved March 2d, 1867," and that thereafter he was adjudicated a bankrupt, and that William Fell Giles, Jr., was appointed his assignee in bankruptcy, the plaintiff is not entitled to recover, on account of any funds which were placed to the credit of the Ætna Life Insurance Company, which came to the hands of the garnishee within four months next preceding the said 27th day of February, 1868, and were not in its hands previous to said time.

6. If the jury shall find from the evidence, that the funds in the hands of the garnishee, mentioned in the evidence, were or now are standing to the credit of the Ætna Life Insurance Company, have never stood to the credit of Lounsbury, the defendant in the judgment, and that there never were any funds in the hands of the garnishee, standing to the credit of said Lounsbury, and that he was an agent in the employment of the Ætna Life Insurance Company, and never had any claim against the said company or the funds aforesaid, in the hands of the garnishee, except for services rendered as agent aforesaid, then the jury cannot render a verdict for a greater amount than they shall find from the evidence was due from the Ætna Life Insurance Company to said Lounsbury, at the date of the attachment; and if they shall further find, from the evidence, that all the funds in the hands of the garnishee, standing to the credit of the said company at the date of the attachment, were paid over to it at a time when the garnishee had no notice that they were sought to be affected by this attachment, the verdict must be for the garnishee.

The plaintiff offered the following prayers:

1. If the jury believe from the evidence in the cause, that from the 27th of April, 1867, when the attachment in this cause was laid in its hands, down to the present time, the garnishee, the First National Bank, has had in its hands at any time any moneys of Wales B. Lounsbury, then the plaintiff is entitled to a verdict against the said bank, for such amount as they shall so find, not exceeding the amount attached for with interest, provided the jury shall find that Wales B. Lounsbury and William B. Lounsbury, the party sued and summoned in the original case, are one and the same person, and known as such, and the fact that the account was kept with the bank in the name of the Ætna Life Insurance Company, is no bar to the recovery of the plaintiff, if the jury find as above.

2. If the jury believe that on or about the 14th of February, 1868, there was standing to the credit of the Ætna Life Insurance Company, on the books of the First National Bank, a balance of $2,000.00, retained by the bank to meet the exigencies of this attachment, and that said balance arose from deposits made by Wales B. Lounsbury, as agent of said company, and that said Lounsbury, as such agent, opened the said account, and drew the checks, and made the deposits embraced therein, by the authority of the company, and shall further find that after the said 14th of February, said Lounsbury paid to the company the said sum of $2,000.00, for the purpose of relieving it from the consequences of said attachment, and of the retention of said balance by the bank, and the said company accepted said payment for that purpose, leaving said Lounsbury the said $2,000.00, balance in bank as his own, subject to the result of this controversy, then the plaintiff is entitled to a verdict against the bank for the amount of his judgment with interest: provided the jury shall further find that Wales B. Lounsbury and William B. Lounsbury, the party sued and summoned in

the original cause, are one and the same person, and known as such.

The Court rejected all the prayers of the garnishee, except the fourth, which, with the prayers of the plaintiff, it granted. To this ruling of the Court the garnishee excepted, and the verdict and judgment being for the plaintiff, it appealed.

· The cause was argued before BARTOL, C. J., BRENT, GRASON and MILLER, J.

*William Meade Addison*, for the appellant:

The judgment on which the attachment was issued being against William B. Lounsbury, an attachment could not bind the assets of Wales B. Lounsbury. *Mathews vs. Dickinson*, 1 *Moore*, 105; *Cole vs. Hindson, et al.*, 6 *Term Rep.*, 236; *Reeves vs. Slater*, 7 *Barn. & Cres.*, 486; *Keech vs. Balt. & Wash. R. R. Co.*, 17 *Md.*, 48. Even if this were not so, the attachment could not bind, in the absence of proof that Wales B. Lounsbury was the same person as William B. Lounsbury; and, under the ruling of the Court excluding all evidence offered thereof, there was no such evidence in the cause. *Reeves vs. Slater*, 7 *Barn. & Cres.*, 486.

The plaintiff cannot recover against the garnishee for any commissions that might have been due from the Ætna Life Insurance Company to Lounsbury before the 19th of December, 1867, the day the plaintiff gave the bank notice that the funds of the Ætna Life Insurance Company were intended to be affected by the attachment, upon the principle, that if an agent pay over to his principal before notice by claimant, he is not liable to the claimant. *Elliott vs. Swartwout*, 10 *Peters*, 153; *Story on Agency*, sec. 300, *note* 3; *Union Bank of Md. vs. Johnson & Glenn*, 9 *G. & J.*, 317; *Bingham vs. Lamping*, 26 *Penn.*, 340.

Lounsbury having been declared a bankrupt ·on an ap-

plication filed the 27th February, 1868, the attachment could not bind any assets of his that came to the hands of the garnishee more than four months anterior to that date, to wit, the 27th October, 1867. Section 14 of the Bankrupt Act of the United States, of the 2d March, 1867. An execution of attachment is mesne process; for on a judgment in such attachment against the garnishee a *fieri facias* (final process) would issue. *Hinkley and Mayer on Attachment*, 48, 49, 50.

The defendant being the employé of the Ætna Life Insurance Company, no part of his wages, other than such as was due and owing to him at the date of the attachment, was liable to be attached. *Article* 10, *sec.* 36, *of the Code of Public General Laws; Moore, et al., Garn. vs. Heaney*, 14 *Md.*, 558 ; *Evans' Prac., Second Edition*, 135.

*S. Teackle Wallis*, for the appellee :

The evidence objected to in the first Bill of Exceptions, with the accompanying proof, was admissible, and the appellee was entitled to have condemned, so far as necessary for the payment of his debt, any of the money in the bank which he might prove belonged to the defendant, although it had been deposited in the name of the Insurance Company. *Cecil Bank vs. Snively*, 23 *Md.*, 254.

The object of the proceeding being to condemn for the payment of Wales B. Lounsbury's debt money, which had been deposited by W. B. Lounsbury, it was most material to the attainment of justice to show that the writ identified to the cashier of the bank, on whom it had been served, the person intended to be affected by it. The testimony objected to in the second exception was therefore properly admitted.

The appellant's first prayer was properly rejected, because it avers that there was no evidence that Wales and William B. Lounsbury were the same person, notwithstanding the proof that Wales considered a judgment

against William as one against himself, that the appellants' cashier considered an attachment against William to bind the credits of Wales, that the bank kept money enough to meet the exigencies of the attachment, and that nearly everybody in the insurance business, in which the defendant was engaged, supposed his name was William.

This prayer does not involve the point, nor is it otherwise legitimately raised by the record, that advantage could be taken in this proceeding of the misnomer of the defendant in the original cause. If the appellee is in error in so supposing, it is submitted that the misnomer could only have been taken advantage of by plea in abatement, and no such plea having been interposed, the right to rely on that defence, only pleadable in abatement, is forever gone; that the judgment obtained against the party in the erroneous name, was binding upon him, and an execution issued in that name could be levied upon the effects of the real defendant. 1 *Tidd's Practice*, 449, 50; 2 *Tidd's Practice*, 1025; *The Lafayette Ins. Co. vs. French*, 18 *Howard*, 404, 409; *Hawkins vs. Bowie*, 9 *G. & J.*, 428; *Crawford vs. Satchwell*, 2 *Strange*, 1218; *Smith vs. Patten*, 6 *Taunton*, 115, 116; *Mead vs. Haws*, 7 *Cowen*, 332; *Griswold vs. Sedgwick*, 6 *Cowen*, 456; 1 *Chitty's Pleading*, 245; *Oakley vs. Giles*, 3 *East*, 167; *Lucas vs. Farrington*, 21 *Ill.*, 31; *Selman vs. Shackelford*, 17 *Geo.*, 615; *Jones' Estate*, 27 *Penna.*, 336; *Brown vs. Kemper*, 27 *Md.*, 666, 71; 5 *Robinson's Practice*, 92.

Having identified Wales, erroneously called William in the original proceedings, as the person on whom process was served, against whom judgment was rendered, whose credits were intended to be affected by the attachment; having shown that the garnishee knew that, and reserved funds to meet the exigencies of the attachment, it was immaterial whether William had funds in the garnishee's hands or not. There was no such person as William, so far as the record shows. There was a Wales, sometimes

called and known as William. The issue was whether he had funds in the garnishee's hands or not. The appellant's second prayer was therefore properly overruled.

Article 10, section 36 of the Code is not applicable to the case. It was not an attachment of the wages of an employé in the hands of his employer, but an attachment of the defendant's own funds in the hands of the bank.

The 14th section of the Bankrupt Law is not applicable to the case. The attachment was not issued within four months next preceding the commencement of the bankrupt proceedings. That clause dissolves attachments issued within that time, but does not affect or limit the operation of an attachment, issued as this was, before. The appellant's fifth prayer was, therefore, properly rejected.

MILLER, J., delivered the opinion of the Court.

The appellee obtained a judgment against *William* B. Lounsbury, on the 12th of March, 1867, for $1,620.30, and issued an attachment by way of execution therein, which was laid in the hands of the First National Bank of Baltimore, as garnishee, on the 27th of April of the same year. The controversy as shown by the record, is solely between the attaching creditor and the garnishee. The case was tried in August, 1868, and we shall consider the questions presented by the exceptions, without reference to the order in which they arose at the trial, and without noticing in detail all the prayers offered by the appellant.

The true name of the defendant in the judgment, the party intended to be sued and upon whom the writ was served, was *Wales* B., and not *William* B. Lounsbury, and one point strenuously insisted upon in argument is, that the judgment being against *William*, the attachment could not bind the assets or credits of *Wales*. To the garnishee's plea of *nulla bona* of the said *W.* B. Lounsbury, the plaintiff replied that *William* B. Lounsbury, the defendant in

the judgment, is otherwise known as *Wales* B. Lounsbury, and that the said *Wales* B. Lounsbury, *W.* B. Lounsbury, and *William* B. Lounsbury are one and the same person, and the same who was summoned in the original case and against whom the judgment was rendered, &c. It was proved that the writ was served upon *Wales*, but he did not appear, and judgment by default was obtained, and subsequently duly extended by the Court. In his application, under the name of *Wales*, for the benefit of the Bankrupt Law of the United States, on the 27th of February, 1868, he returned, in his lists of debts, the plaintiff as his creditor on this judgment. There is no doubt, that where a party is sued by a wrong name, and he *appears* to the suit and does not plead the misnomer in abatement, and judgment is rendered against him in the erroneous name, execution may be issued upon it in that name, and levied upon the property and effects of the real defendant; but there is some conflict in the decisions, whether the same result will follow if he does not appear, and the judgment is obtained by default. The weight of authority, however, is that this makes no difference, and if the writ is served on the party intended to be sued, and he fails to appear and plead in abatement, and suffers judgment to be obtained by default, he is concluded, and in all future litigation may be connected with the suit or judgment by proper averments. *Crawford vs. Satchwell*, 2 *Strange*, 1218 ; *Smith vs. Patten*, 6 *Taunt.*, 115 ; *Oakley vs. Giles*, 3 *East*, 168 ; *Smith vs. Bowker*, 1 *Mass.*, 76 ; *Waterbury vs. Mather*, 16 *Wend.*, 613 ; *Lafayette Ins. Co. vs. French*, 18 *How.*, 409. The case of *Cole vs. Hindson*, 6 *Term Rep.*, 234, was a *distringas* to compel an appearance, and falls within the distinction taken by Lord TENTERDEN, in *Reeves vs. Slater*, 7 *Barn. & Cress.*, 486, between *mesne* and *final* process. We cannot, therefore, sustain this position of the appellant. In this connection is to be noticed also, the objection that there is no proof that Wales and

William are the same person. This is based on the assumption that the Court had, on motion, ruled out all the testimony on this subject. But the fair and just construction of the motion to exclude the evidence is, that it was confined to that of the two witnesses, Webb and Carey, which was taken, subject to exception. The testimony of the Deputy Sheriff that he served the writ upon Wales, and the admission of the latter in the proceedings in bankruptcy that this very judgment against William was a judgment against himself, and so treated and considered by him, were offered and went to the jury without objection, were unaffected by the motion, and were amply sufficient to warrant the jury in finding the identity of person.

The appellant's fifth prayer asserts that as Lounsbury applied for the benefit of the Bankrupt Law on the 27th of February, 1868, the plaintiff could not recover for any funds which came to the hands of the garnishee within four months next preceding that date. This prayer is founded on that clause in the 14th section of the Bankrupt Act, which vests all the property of the applicant in the assignee, " although the same is then attached on *mesne process* as the property of the debtor," and declares the assignment " shall dissolve *any such* attachment *made* within four months next preceding the commencement of " the proceedings in bankruptcy. Without attempting to define the meaning of the terms, " attachment made," as here used, we are clearly of opinion this clause refers to writs of attachment when used as *mesne,* and not as *final* process. By our law (*Code, Art.* 10, *sec.* 30) the plaintiff in a judgment may, " *instead of any other execution,*" issue an attachment thereon against the lands, tenements, goods, chattels, and credits of the defendant. The writ, when so issued, is placed on the same footing, performs the same office, and is governed by the same rules as a *fi. fa.* *Griffith vs. Ætna Fire Ins. Co., Garn. of Upton,* 7 *Md.,* 102; *Boyd*

*vs. Talbott, Garn. of Hook, Ibid.*, 404. This is *final*, and not *mesne* process. It is true it originates a new suit between the plaintiff and the garnishee, which may result in a judgment and execution against the latter, but this makes it none the less final process as against the defendant in the original judgment, and such process does not fall within the operation of this clause of the Bankrupt Act.

It appears from the evidence in the record, that Lounsbury was the agent of the Ætna Life Insurance Company, of Hartford, Connecticut, and made deposits in the First National Bank to the credit of that company. The bank account was kept in the name of the company, and Lounsbury drew checks thereon from time to time under a power of attorney for that purpose from the company. The plaintiff, supposing or insisting that part of the money so deposited really belonged to Lounsbury, caused this attachment to be laid in the hands of the bank. When served upon the cashier, in April, 1867, he examined the books of the bank, and finding no account in the name of Lounsbury, and considering it could not affect the account of the insurance company, directed the counsel of the bank to return no funds of Lounsbury in the hands of the bank, and continued the company's account without reference to the attachment. In December following, the bank's counsel, who had been informed by the counsel for the plaintiff that the attachment was intended to reach and cover all moneys and credits of Lounsbury in the bank, either in his own name or as agent, trustee, or in the name of the Ætna Life Insurance Company, instructed the cashier to retain funds of the account of this company to cover the attachment, and the cashier immediately notified the company and Lounsbury of the condition of affairs. The latter then drew and remitted to the company a check for $12,728.40, the whole amount in bank to the company's credit. This check, when pre-

sented, the cashier refused to pay, and insisted on retaining $2,000 to meet the exigencies of this attachment. Afterwards another check was drawn for $10,728.40, which the bank paid on the 5th of February, leaving a balance of $2,000, which, as the cashier testified, is still retained to meet this attachment. No deposit was afterwards made by Lounsbury, but on the 27th of February, the day of his application for the benefit of the Bankrupt Act, he remitted $2,000 to the company, which appears as a credit to him as of the 28th of February in his account with the company on their books, and in his testimony in chief, when examined as a witness for the garnishee, he says this $2,000, which was the last item in the company's account with him, was for the $2,000 the balance of the check for $12,728.40, which the bank would not pay, and appears as a credit to him in the company's account, because they held his check for more than the amount paid by the bank. It is true he afterwards attempted to contradict and explain this statement, and says this $2,000 which he remitted to the company was for other moneys he actually owed them, and was entirely independent of the $2,000 retained by the bank, which was still the money of the company, and he had no interest in it whatever. His testimony, however, on this point is very confused and unsatisfactory, and we are of opinion his previous admission in connection with the accounts, books and other proof in the case, afforded a sufficient basis of testimony on the subject to justify the court in submitting to the jury the finding of the facts stated in the plaintiff's second prayer. The law of this prayer is clearly correct, for, on the facts there stated, the $2,000 remaining in bank became the money of Lounsbury and was a credit or debt due by the bank to him, and therefore subject to this attachment, it having so come to the hands of the bank, or thus made such credit or debt before trial.

Under our attachment system it is the settled law of

this State, that an attachmant affects all property and credits of the debtor in the hands of the garnishee, or which may come to his hands at any time after laying the attachment and before trial, but in the present instance the plaintiff clearly could not, under the attachment against Lounsbury, recover for any funds to the credit of this company which the bank had paid over to them after attachment laid but before notice that such funds were designed to be affected by the writ. The plaintiff's first prayer announces the former, and the defendant's fourth prayer the latter of the above propositions, and it is said these two instructions, both of which were granted, were contradictory and calculated to mislead the jury. If they had been told the one instruction was a modification of the other, no objection could have been taken; and such we think was in this case the substantial effect of granting both. It is to be presumed the jury was possessed of ordinary intelligence, and they must therefore have regarded the instruction granted at the instance of the garnishee as a modification of the general language of the plaintiff's first prayer.

From what has been said it follows there was no error in the first exception in admitting in evidence the bank account, accompanied as it was with the tender of further proof that a portion of the moneys to the credit of the company in that account belonged in fact to Lounsbury. Nor can we perceive that any possible injury was done the bank by the Court's ruling in the second exception in allowing the cashier to state as part of his narrative and explanatory of his action in the matter, that when the attachment was served on him he considered it to be against W. B. Lounsbury, and to bind anything which he might have in bank, and that he knew by no other name than W. B. Lounsbury the person who made the deposits and drew the checks in the account of the Ætna Life Insurance Company with the bank, especially

when this testimony was expressly excluded by the Court as evidence of the identity of William B. with Wales B. Lounsbury. And lastly, by no possible rule of construction can any part of these funds thus in bank which may have been proved to belong to Lounsbury, be regarded as wages or hire of an employee in the hands of his employer so as to be exempt from attachment under sec. 36, Art. 10 of the Code.

These views dispose of all the points or questions which, upon the broadest construction of the prayers and exceptions, can be said to appear by this record to have been tried and decided by the Court below, and we are forbidden by law to decide any others. *Act of* 1862, *ch.* 154. We therefore forbear the expression of any opinion upon several questions of interest and importance argued at bar. Finding no error in the rulings excepted to we must affirm the judgment.

*Judgment affirmed.*

(Decided 16th June, 1869.)