JOHN CAREY and MICHAEL McCOLGAN, trading as CAREY & McCOLGAN *vs.* GEORGE MERRYMAN, and others, trading as MERRYMAN, BROTHER & Co.

*Refusal of the Court to sign bill of Exceptions—Instructions to the jury.*

The refusal of a Court to sign and seal a bill of exceptions, or to incorporate therein certain evidence, cannot be reviewed by this Court upon a bill of exceptions taken to such refusal, unless the refusal of the Court below is based upon its opinion, that such evidence is irrelevant.

Case where instructions to the jury were held not to be inconsistent with each other.

APPEAL from the Baltimore City Court.

This was an action of *assumpsit* upon the usual money counts, brought by the appellees against the appellants.

*First Exception.*—The witness, B. P. Ledley, having been sworn, was shown certain books, which he stated were yard books, showing the amounts and qualities of bricks furnished each day from the yards of the plaintiffs, and kept by himself; he then proceeded to read from the said books, entries corresponding to the dates of items in the bill of particulars from January 22nd, 1873, to August 21st, 1874.

Upon cross-examination of the same witness, it appeared that the said books were transcripts from smaller books, known as brick books, carried by the foreman of the yards, and made up every evening from memory and loose memoranda in their possession, as compared with the returns made by the carters. The defendants then moved the Court to exclude the testimony of the said witness, as not having been founded on an examination of books of original entries.

The Court reserved its decision on this motion, until the case should be closed.  The plaintiffs then produced the aforesaid brick books, and offered to have the witness go over them as he had done the yard books.  The defendant here stated that they waived this, and asked that the said brick books might be given them for the purpose of inspection and cross-examination, which was done.

On cross-examination of the witness, B. P. Ledley, it appeared that the entries in the said brick book were partly in his handwriting, partly in that of his deceased father, who had been foreman of the yards, and made them as such, and partly in that of his brother, George Ledley, who temporarily replaced his father during the latter's illness, and partly in that of J. E. Crangle.  The said George Ledley was similarly called as a witness, and the defendants waived his going over the items in his handwriting as they had done in the case of his brother.  The aforesaid J. E. Crangle was then called as a witness, and testified from one of the brick books, as to the items on the bill of particulars contained between August 21st and November 28th, 1874.

On cross-examination, he identified all the entries between April 15th and July 23rd, 1874, in the said brick book, as being in his handwriting, and those between July 23rd, 1874, and August 21st, as being in the handwriting of the witness, B. P. Ledley, and stated that the said Ledley kept a duplicate book during the first mentioned period from which the yard books aforesaid were made up. The witness, B. P. Ledley, being recalled, gave the same testimony as the said Crangle as to handwriting, but stated that he had not kept any such duplicate book, and no such duplicate book was produced, though a book was produced containing certain entries in the handwriting of the said Ledley between the above named dates.

The case having been closed, the defendants made the following motions :

*First Motion.*—The defendants, by their counsel, move the Court to exclude from the consideration of the jury, the testimony of the witness, B. P. Ledley, in regard to the number and quality of the bricks comprised in the items of the bill of particulars filed in this cause, except in so far as the same corresponds with entries in the small books, known as "Brick Books," put in evidence by the plaintiffs.

*Second Motion.*—The defendants further move to exclude all that portion of the testimony of the said witness, as relates to items of the said bill, charged as for dates between 10th April, 1874, and the 22nd April, 1874, it being admitted both by the said witness, and the witness J. E. Crangle, that the entries for the said dates in the small book, marked with the name of the said Crangle, are in the handwriting of the said last named Crangle, and no other entries relating to the dates aforesaid appearing in any other of the small books aforesaid.

Which motions the Court overruled ; to which action of the Court the defendants except, and pray the Court to sign and seal this bill of exceptions ; to this the plaintiffs objected, as not containing a true statement of the facts of the case, and the Court refused to sign or seal the same, but substituted therefor the following :

*Statement of the Court.*—In the examination of the witness, B. P. Ledley, on behalf of the plaintiffs, a certain book of the plaintiffs, kept by the witness, was used by the witness to refresh his memory, as a book of original entries ; on cross-examination of the witness, it appeared that certain memorandum books kept in pencil, called "Brick Books," were used in the business of the plaintiffs, and that use was made of these books by the witness in making the entries on said first mentioned book, and it was contended by the defendants that the memorandum books were the books of original entries, and not the said first mentioned book.

The Court did not decide the point, and the counsel agreed, in order to save the time which would be occupied by a re-examination of the witness, that they would compare the memorandum books and the first mentioned book, and find the items, if any, in which said books differed, and report the same to the Court.

It was the intention of the Court after this report was made, to take further testimony, if necessary, as to the manner in which the respective books were kept, and then to decide the question. The memorandum books were examined by the respective counsel, but no report was made to the Court, and no further proof as to the manner in which the memorandum books and the said original book were kept was offered.

At the close of the testimony, and after the witnesses were discharged, the defendants' counsel made the motions (hereinbefore inserted,) which the Court overruled.

The defendant, McColgan, when on the stand as a witness, said that he had never disputed the delivery of any of the bricks mentioned in the bill of particulars, except those delivered for the houses on Lemon alley, although he had received bills for them as furnished; whereupon the Court remarked to him that if he had said this before, he would have saved a great deal of trouble, and the Court then supposed that all question about delivery of the bricks, except those on Lemon alley, was no longer a matter of dispute.          GEO. WM. BROWN.

The defendants then prayed the Court to so amend the said bill of exceptions, as to make the same include a statement of the testimony of the witnesses, B. P. and George Ledley and Crangle, relative to the various books therein mentioned; which the Court (BROWN, J.,) refused to do. The defendants excepted.

*Second Exception.*—The case having been closed, the plaintiffs offered the five following prayers:

1. If the jury shall find from the evidence, that the plaintiffs paid and furnished to the defendants at their request, the money and bricks charged to the defendants in the bill of particulars filed, and that said bricks were furnished at the prices agreed on between the plaintiffs and defendants, then their verdict must be for the plaintiffs for such amount, if any, as the jury shall find to be due the plaintiffs on said bill with interest in the discretion of the jury.

2. If the jury shall find for the plaintiffs under the plaintiffs' first prayer, and shall further find that the bricks charged to the defendants in said bill of particulars, were delivered on the premises, or at such points as the said defendants directed, then their verdict must be for the plaintiffs; even though they shall further find the bricks were not used by the defendants, provided they shall further find that the bricks furnished were the same bricks purchased from the plaintiffs.

3. If the jury shall find that the pressed bricks, for the front of the ten houses on Mount street, were selected by the defendants at the brick-yard of the plaintiffs, and that said bricks so selected were furnished by plaintiffs to the defendants at the said houses on Mount street, and were afterwards used by defendants or their agents in laying the front wall of the said buildings on Mount street, then they are not to consider, in making up their verdict, any of the testimony in relation to the appearance of the front of the said Mount street buildings.

4. If the jury shall believe from the evidence that the plaintiffs and the defendants made the several contracts as testified to by the plaintiffs, and that by agreement between the plaintiffs and defendants, the selection of the pressed brick for the Mount street houses was left to the defendant, McColgan, and James E. Crangle, foreman of the plaintiffs, and that in accordance with said agreement the said pressed brick was selected by the defendant,

McColgan, and the witness, Crangle, and the bricks so selected were delivered to the defendants, then the jury must not regard any of the testimony in relation to the variety of the color of the pressed brick in the Mount street front.

5. If the jury shall find that the plaintiffs made a contract with the defendants for the sale of pressed brick to be used in the erection of the front walls of the buildings on Mount and Lombard streets, at and for the sum of $25 per thousand, and shall further find that it was also agreed between said plaintiffs and defendants that defendants should go to plaintiffs' brick-yard, and that said defendants and plaintiffs' foreman, Crangle, should select the kind and quality of pressed brick, and shall further find that, in pursuance of said contract, the said defendants did go to said brick-yard, and that said defendants and said foreman did select said pressed brick to be used in the erection of said front walls, and that said bricks so selected were furnished by said plaintiffs and used by the defendants in the partial erection of said front walls, and shall further find from the evidence that after said bricks were so used, the defendants did not select with said foreman bricks at said yard for the purpose of completing said fronts, but, on the contrary, depended on the said foreman, Crangle, to select the remaining brick for said front walls, and that said pressed brick were by order of defendants furnished by plaintiffs for the completion of said fronts and used by the defendants, and that the defendants did not object to said bricks until after the completion of said walls, then the jury are not to consider any of the evidence in regard to the color of the bricks in said front walls of the house on Mount street.

And the defendants offered the six following prayers:

1. Under the pleadings in this cause the plaintiffs can only recover for the items charged in their bill of particulars, and only for what the jury shall find from the evi-

dence was the value of the bricks comprised in the said items, and which bricks the jury shall further find to have been delivered to the defendants in addition to the amount of such other of the said items as do not relate to the sale and delivery of bricks, and which the jury shall find to have been sustained by the proof.

2. If the jury shall find from the evidence that the defendants agreed to purchase from the plaintiffs bricks of a certain quality and color, and shall not find from the evidence that bricks of the quality and color agreed upon were actually delivered by the plaintiffs to the defendants, then the defendants were bound to pay for the said bricks, only what the jury shall find they were worth to the said defendants, unless the jury shall further find that the said defendants agreed to take bricks of the color and quality actually sent by the plaintiffs in place of those originally agreed upon, and unless the jury shall further find that the defendants accepted the said goods from the plaintiffs under the further instructions of the Court.

2 b. The jury are instructed that unless the defendants had an opportunity to perceive the condition of said bricks, by the use of reasonable vigilance during the construction of the said houses, then the said bricks are not to be considered as accepted by the defendants, and if the jury shall find that either by a general custom in the brick-making trade, or by the terms of a special contract between the plaintiffs and defendants, it was the exclusive duty of the brick-maker to provide for the uniformity of the color in the bricks, this fact is to be considered in determining whether the defendants used the due degree of vigilance.

3. That the plaintiffs are bound by the bill of particulars filed in this cause, and can under no circumstances recover more than the balance thereby shown to be due, with interest, in the discretion of the jury.

4. That if the jury shall find from the evidence, that any of the items of the said bill of particulars, relate only

to bricks not actually delivered by the plaintiffs to the defendants, or that the amounts of any of the said items exceed what the bricks comprised therein were actually worth, or that any of the items in the said bill not relating to bricks have not been sustained by the proof, then the jury must deduct from any verdict they might otherwise find for the plaintiffs, the amount of the class of the said items first above mentioned, and the excess of charge in the class of items secondly above mentioned, and the amount of the class of the said items thirdly above mentioned; and if the aggregate of the said deductions shall exceed in amount the verdict to be found by them under the third instruction, then their verdict must be for the defendants.

5. That the jury may deduct from the amount charged for L. A. brick in the bill of particulars, the amount of such brick, if any, which they may find from the evidence not to have been actually used by the defendants, provided they shall find from the evidence that the plaintiffs' foreman, Mr. Crangle, agreed with the defendants, that they should pay only for such L. A. brick as they actually used; and that Mr. Crangle was authorized by the plaintiffs to make such an agreement.

6. If the jury shall believe from the evidence, that the defendants purchased from the plaintiffs the pressed brick mentioned in the testimony, at the rate of twenty-five dollars per thousand, and shall further believe that the bricks delivered under such purchase by the plaintiffs, were of a different and inferior quality from those purchased, then the jury should deduct from the amount claimed by the plaintiffs, the difference in value between those delivered and the contract price of those purchased; the jury should also deduct from the claim of said plaintiffs, the price charged for any bricks which the jury may believe were not delivered, if they should find that any were not delivered, also the difference between the price

of any bricks as sold by the plaintiffs, or their agent, and the price charged therefor, if they should find that there is any such difference.

The Court granted all the plaintiffs' prayers, and the third of the defendants, and the fifth and sixth of the defendants' were conceded, and refused the first, second, second (b,) and fourth prayers of the defendants. The defendants excepted.

The jury rendered a verdict for the plaintiffs, and judgment was entered accordingly. The defendants appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER and ROBINSON, J.

*James McColgan,* and *Charles J. Bonaparte,* for the appellants.

The right to a proper bill of exception is one *ex debito justitiæ,* inherent in every party to a suit at common law in this State, and is indispensable if an appellate tribunal is to be of any use. *Alexander's Br. St.,* 126, 131, 133.

A bill of exceptions must contain "such statement of facts as may be necessary to explain the bearings of the rulings upon the issues or questions involved." *Rules, &c., respecting Appeals, &c., Rule* 5. To disregard this rule is to violate the law. *Const. of Md., Art.* 4, *sec.* 18.

Even if there was nothing in the exception, the defendants were entitled to have it submitted to this Court, and if they were deprived of that privilege below, they did not have a fair trial. *Const. of Md., Art.* 4, *sec.* 14; *Bennett vs. Pen. & Or. S. B. Co.,* 32 *E. L. & Eq.,* 318; *Newton vs. Boodle,* 3 *C. B.,* 795.

It is apparent at first sight, that the first and second prayers of the plaintiffs are wholly inconsistent with the fifth prayer of the defendants. The first by implication, the second in express words, deny the right of the defendants to deduct from the plaintiff's claim the "L. A."

(long arch) brick which they did not use, *although* Mr. Crangle *may* have agreed with them that they should not pay for such brick, and *may* have been authorized to do so by the plaintiffs. In permitting all three of these prayers to go to the jury, the Court granted inconsistent instructions, which is error. *Haney vs. Marshall,* 9 *Md.,* 194, 216; *Cumb. Coal & Iron Co. vs. Tilghman,* 13 *Md.,* 74, 85; *Adams vs. Capron,* 21 *Md.,* 186, 206; *B. & O. R. R. Co. vs. Blocher,* 27 *Md.,* 277, 286; *Cooper vs. Utterbach,* 37 *Md.,* 282, 314.

But the error was even more serious, for the defendants' fifth prayer having been *conceded* became *the law of the case,* and a prayer inconsistent with its terms was plainly erroneous. *B. & O. R. R. Co. vs. Resley,* 14 *Md.,* 424; *Sittig vs. Birkestack,* 35 *Md.,* 273.

*Joseph P. Merryman,* for the appellees.

An exception, which is neither signed nor sealed by the Judge is no law. No exception and no question can arise from it. The exception must be sealed by the Court. *Milburn vs. State,* 1 *Md.,* 13.

The bill of exceptions not having been signed and sealed by the Court, the motion of appellants to amend the same cannot be considered by this Court. *Milburn vs. State,* 1 *Md.,* 13; *Rutherford vs. Pope, et al.,* 15 *Md.,* 579; *Clemens vs. Mayor, &c.,* 16 *Md.,* 208; *Ridgely vs. Bond,* 17 *Md.,* 14.

And even if said motion had been granted, the bill of exceptions tendered by appellants would not have contained a true statement of the facts in the case.

GRASON, J., delivered the opinion of the Court.

The first exception was taken to the refusal of the Court below, to incorporate in a bill of exceptions tendered by the appellants, certain evidence which they allege was not admissible, and to the admission of which they assert they had objected.

The refusal of the Court to sign and seal a bill of exceptions, or to incorporate therein certain evidence, cannot be reversed by this Court upon a bill of exceptions taken to such refusal, unless the refusal of the Court below is based upon its opinion that such evidence is irrelevant. A party feeling himself aggrieved by such refusal, must resort to a different proceeding to have the error, if it be one, corrected. *Marsh, et al. vs. Hand,* 35 *Md.,* 124. But if the first bill of exceptions were properly before us, we should have no hesitation in affirming the rulings of the Judge of the Baltimore City Court, for the reasons assigned by him for not signing the bill of exceptions tendered by the appellants' counsel, or inserting therein the evidence which their counsel requested to be incorporated in it.

The second exception was taken to the granting of the appellees' five prayers and the refusal of the Court to grant the first, second, second B, and fourth prayers of the appellants, their third having been granted and their fifth and sixth conceded.

In the argument in this Court the counsel of the appellants admitted the correctness of the rulings of the Baltimore City Court, upon their first and fourth prayers, as also upon all the prayers of the appellees except the first and second, and abandoned their exception so far as they were concerned. But it was insisted that the Court erred in rejecting their second and second B prayers, and in granting the first and second of the appellees.

The second prayer B, it was admitted, was offered as an amendment of their second prayer. These prayers asked an instruction that, if the jury should find the facts therein stated, then the defendants were bound to pay for the bricks only such sum as the jury should find them to be worth to the defendants, unless the jury should further find that they agreed to take bricks of the color and quality actually sent by the plaintiffs, in place of those originally agreed upon, and unless the jury should further find that

the defendants accepted said goods from the plaintiffs *under the further instructions of the Court.* To what instructions the jury were thus referred, whether to those granted at the instance of the appellees or to those of the appellants, which were granted and conceded, it was impossible for them to know. These prayers were calculated by this uncertainty to confuse and mislead the jury, and were for this reason properly rejected.

It is contended that the appellees' first and second prayers are in direct conflict with the appellants' fifth prayer, which being conceded, was the law governing the case. *Haney vs. Marshall,* 9 *Md.,* 215; *Balto. & Ohio R. R. Co. vs. Blocher,* 27 *Md.,* 286; *Cooper vs. Utterbach,* 37 *Md.,* 314.

If there be such conflict, therefore, the judgment appealed from cannot stand.

The record shows that the plaintiffs offered proof at the trial that they had sold and delivered to the defendants all the bricks charged for in their bill of particulars, at the prices therein charged, and then the defendants offered evidence tending to prove that certain of the long arch brick charged for in said bill were of bad quality, so that they could not be cut, and were in great part spoilt in the fitting, and that Crangle, the plaintiffs' foreman, agreed on behalf of the plaintiffs, that only such of the same as were used should be paid for, and that a much larger number were charged for than were used. The plaintiffs then offered rebutting evidence to prove that the defendants had contracted to select the bricks themselves, and did select them, and that the bricks so selected by them were delivered by the plaintiffs, and that the fronts of the houses had been injured by the bricklayers inserting bricks intended for one story of the houses in another. In this state of the proof, the plaintiffs' first prayer was granted, instructing the jury that if they should find from the evidence that the plaintiffs paid and furnished to the

defendants, at their request, the money and bricks charged in the bill of particulars, and that said bricks were furnished at the prices agreed upon between the parties to the suit, then their verdict must be for the plaintiffs for such amounts, if any, as the jury should find to be due to plaintiffs on the bill, with interest in their discretion.

Their second prayer instructed the jury that they should find for them under their first prayer, and should find that the bricks charged to defendants were delivered on the premises, or at such points as defendants directed, then their verdict must be for the plaintiffs, even if they should find the bricks were not used by the defendants; provided the jury should further find that the bricks furnished were the same bricks purchased by them of the plaintiffs. The appellants' fifth prayer, which was conceded, instructs the jury that they may deduct from the amount charged for long arch brick, in the bill of particulars, the amount of such brick, if any, which they may find from the evidence not to have been actually used by the appellants, provided they shall find from the evidence that the plaintiffs' foreman, Mr. Crangle, agreed with the appellants that they should pay only for such long arch brick as they actually used, and that Crangle was authorized by the appellees to make such agreement. In other words, the appellees' first and second prayers stated as a general proposition, that, if the jury should find the sale and delivery of the bricks, charged in the bill of particulars, at the prices agreed upon by the parties, the appellees were entitled to recover, notwithstanding the bricks were not used, while the appellants' conceded fifth prayer instructed the jury that, if they should find a special agreement, from the evidence, that the appellants were not to be charged for such of the long arch brick as were not used, then the amount of such long arch brick as were not used, might be deducted by the jury from the amount charged in the bill of particulars. We think it clear that

this instruction, which the appellees conceded to be correct, is not inconsistent or in conflict with the appellants' first and second prayers, but is nothing more than a modification of them. The three instructions taken together tell the jury, that if they believe the bricks charged were sold and delivered at prices agreed on by the parties, the appellees are entitled to recover, although the bricks were not used, but if they should further find that there was a special agreement between the parties, that only such long arch brick as were used were to be paid for by the appellants, then the jury may deduct from the bill such long arch brick as they may find were *not* used. We think the language used by this Court in the case of *First National Bank vs. Jaggers*, 31 *Md.*, 51, especially applicable to the prayers in this case, which are said to be inconsistent and in conflict with each other. It was there said, with respect to prayers which were alleged to be in conflict with each other, "If the jury had been told the one instruction was a modification of the other, no objection could have been taken; and such, we think, was in this case, the substantial effect of granting both. It is to be presumed the jury was possessed of ordinary intelligence, and they must therefore, have regarded the instruction asked," (in this case conceded,) "as a modification" of the appellees' first and second prayers.

Finding no error in the rulings of the Judge of Baltimore City Court, the judgment appealed from will be affirmed.

*Judgment affirmed.*

(Decided 1st March, 1877.)