### WALDROP v. LEONARD.

Where there is a misnomer in defendant's name, but the summons is served on the party intended and he fails to appear and object to the misnomer, and suffers judgment to be obtained by default, he is concluded; and in all future litigation, he may be connected with the judgment by proper averments.

Before WITHERSPOON, J., Spartanburg, April, 1883.

The opinion fully states the case.

*Messrs. J. S. R. Thomson* and *McCrary & Calvert,* for appellants.

*Messrs. Bobo & Carlisle,* contra.

January 6, 1885. The opinion of the court was delivered by MR. JUSTICE McGOWAN. The plaintiff undertook to sue one *Jonas* P. Leonard for an alleged trespass. The writ was issued against *James* P. Leonard, but served on *Jonas.* Upon being served he went to a lawyer to file his answer, when it was discovered that the defendant named in the writ was *James,* and not Jonas Leonard, and thereupon he made no appearance or answer, and the verdict was rendered for the plaintiff by default. Judgment and execution were issued on the verdict against *James* P. Leonard, and the execution returned "unsatisfied."

About that time it was discovered that the name of the party intended to be sued was *Jonas* P. Leonard, and the plaintiff, desiring to take out supplementary proceedings against him, A.

B. Calvert, Esq., one of his attorneys, made the usual affidavit, and an order was obtained requiring "*Jonas P. Leonard, alias James P. Leonard,* to appear and answer concerning his property," &c. A copy of this order was served on *Jonas* P. Leonard, who appeared and denied "that he had been served in any case in which the plaintiff had obtained judgment against him, or that he had ever been known by any other name than Jonas P. Leonard. The deputy sheriff proved that Jonas P. Leonard was the party served in the action of trespass ; that afterwards Leonard said that he had gone to his lawyer to prepare his answer, when it was discovered that the summons ran against James Leonard, and they concluded to pay no attention to the proceedings.

The plaintiff's attorney moved for leave to amend the judgment and execution by inserting the name of *Jonas* in place of that of *James P. Leonard.* This Jonas P. Leonard's attorney resisted, and moved for an order declaring the judgment absolutely void as against him, and dismissing the supplementary proceedings, which latter order was granted by the Circuit judge, and the plaintiff appeals to this court, alleging error : "I. In ruling that the judgment was absolutely void, and the record thereof not subject to amendment. II. In refusing to rule that Jonas P. Leonard was estopped from denying himself the party defendant in said judgment. III. In ruling that supplementary proceedings would not lie on account of the misnomer. IV. In not allowing Jonas P. Leonard to be examined regarding his property. V. In dismissing the proceedings herein supplementary to execution."

There is no doubt whatever that the action would have been dismissed if Jonas P. Leonard, when served with the summons addressed to James, had made the objection of misnomer to set aside the service, by answer, in lieu of the former plea in abatement. *Norris* v. *Graves,* 4 *Strob.,* 32 ; *Bull* v. *Franklin,* 2 *Speer,* 46. It is equally clear that if Jonas had answered to the merits, he would be held to have waived the objection of error in the process served upon him. *Myers* v. *Sealy,* 5 *Rich.,* 476. But it is not so clear as to what should be the result where one person, served with a complaint issued against another, makes no

appearance, objection, or answer; but simply disregards the proceeding as no concern of his.

It is certainly remarkable how little can be found in the reports upon this precise point. The cases are numerous as to what is and what is not a fatal misnomer when the parties in the case make the question; but we have been referred to no case in this state where the misnomer was in the name of the party intended to be sued, and he disregarded it as not binding him. There are some authorities outside of the state, but they are not only conflicting, but absolutely contradictory. For instance, Mr. Freeman says: "The weight of authority is that if the writ is served on the party by a wrong name, intended to be sued, and he fails to appear and plead the misnomer in abatement, and suffers judgment to be obtained, he is concluded, and in all future litigation may be connected with the suit or judgment by proper averments," &c. *Freem. Judg.*, § 154. While Mr. Waite says: "If the defendant appears and does not set up this defence in his answer, he will be deemed to have waived the objection. But a failure to appear and defend does not deprive the defendant of the right to prevent the sale of his property on an execution not directed against it. Thus where a defendant sued by a wrong name fails to appear in the action, he does not waive his right to object to the misnomer even after judgment and execution." 1 *Wait Prac.*, 473; 32 *Barb.*, 277.

This wide difference of opinion seems to arise out of the view which is taken as to whether error in the summons as to the *defendant's name* should be considered as a *mere misnomer*, or as going deeper and touching the very *jurisdiction* of the Court. It is familiar doctrine that there can be no binding judgment against a party, unless the court has jurisdiction of the person of the defendant. Does service upon a party by the wrong Christian name bring the person so served within the jurisdiction of the court, where he is himself entirely passive, doing no act that can be construed into a waiver, as appearing and answering, &c. ?

As before stated, the authorities are not in accord, but all the authorities hold that it is the duty of the party served to inform

the court of the error and have the service discharged ; and it would seem to follow that there should be some liability on his part for omitting to do so, and that when the party intended is served, the proper principle is announced in one of the oldest cases on the subject. *Crawford* v. *Satchwell*, 2 Strange, 1218 (18 Geo. II.). In that case the defendant, whose real name was Arthur Satchwell, was sued in trespass by the name of Archibold Satchwell. *Held*, "that if the defendant omits to plead misnomer, he may be taken in execution by the wrong name."

*Doo* v. *Butcher*, 3 *T. R.*, 611 (1790), was a rule calling on the plaintiff to show cause why the proceedings should not be set aside for irregularity, because the declaration was against the defendant by the name of Thomas, and that in which he was served was John: *held*, "that if the plaintiff sue defendant by a wrong Christian name and the defendant appear by his right name, the plaintiff may declare against him by the right name; *secus*, if the plaintiff file common bail for him, according to the statute by his right name."

*Corbett* v. *Bates*, 3 *T. R.*, 660 (1790), held that "if the *latitat* be sued out against the defendant by one Christian name, and the *alias* by another, and the plaintiff afterwards proceeds, the court will set aside the proceedings for irregularity."

*Cole* v. *Hindson*, 6 *T. R.*, 234 (1795), holds that "if a defendant be sued by the wrong Christian name and fails to appear to the action, he is not concluded." In this case Lord Kenyon said that in the case from Strange, above cited, the party had appeared in the original action, but this does not appear from the report of the case.

*Oakley* v. *Giles*, 3 *East.*, 167 (1802), holds that "if a defendant be sued with process by a wrong Christian name, and afterwards the plaintiff enter an appearance for him, and serve him with notice of declaration by his right name and proceeds to judgment and execution, the court will not set aside the proceedings for irregularity merely on the ground that the defendant never appeared; because he ought to have pleaded such misnomer in abatement." The defendant was, however, let in to defend upon payment of costs, and upon affidavits that he was misled by advice of counsel, and of merits in the case.

*Smith* v. *Bowker*, 1 *Mass.*, 76 (1804), holds that "mistakes in the addition of place, must be pleaded in abatement; and cannot be ground for maintaining trespass against an officer who serves an execution issuing on the judgment." In that case one Samuel Switzer brought an action against Aaron Smith on a note, which was admitted to have been signed by Smith, but in the writ as well as in the judgment and execution obtained thereunder, he was described as Aaron Smith of "Orange," in the county of Hampshire, whereas in fact he was of "Athol," in the county of Worcester. It appeared that the summons for his appearance was left at the residence of Smith in Athol in the county of Worcester. Under the execution issued upon the judgment thus obtained, the defendant, as deputy sheriff, levied on certain cattle of Smith, and this action was brought for trespass in seizing the property of Smith under an execution against Aaron Smith of Orange in the county of Hampshire. The court held as above, saying: "If he was not properly described in the writ, he should have taken advantage of the mistake by plea in abatement. This he did not do, but permitted judgment to be rendered against him." And the only authority cited is the case of *Crawford* v. *Satchwell*, 2 *Strange, supra*.

*Delanoy* v. *Cannon*, 10 *East.*, 328 (1808), holds that "after a writ sued out and common bail filed against a defendant by the name of 'J,' it is irregular for the plaintiff to declare against him by the name of 'R,' sued by the name of 'J,' and the defendant may set aside the proceeding before plea." The court, in answer to plaintiff's counsel, who relied upon *Oakley* v. *Giles, supra*, observed that "the application to set aside the proceedings for irregularity was not made until after judgment and when the defendant might have before pleaded in abatement; but here it is before plea." This would seem to indicate that if the motion had not been made before plea or until after judgment, the motion would not have been entertained. The case of *Summers* v. *Wason*, 1 *Bos. & P.*, 105, was cited as authority.

*Dring* v. *Dickenson*, 11 *East.*, 225 (1809), holds that "if a defendant be served with a writ by a wrong Christian name of 'W,' and do not appear to it, the plaintiff cannot file common bail for him in his right name of 'E,' sued by the name of 'W,'

nor declare against him *de bene esse* in that form, and the proceedings were set aside for irregularity after interlocutory judgment signed for want of a plea." This decision was made by a court very nearly identical as to the judges with that which had previously decided *Oakley* v. *Giles* and *Delanoy* v. *Cannon, supra;* and although these cases were cited and relied on by counsel, no notice is taken of them in the decision of the court, and no effort made to distinguish them. In fact, no authority is cited or reasons given by the court. The only distinction apparent between this case and that of *Oakley* v. *Giles* is, that here there was only an interlocutory judgment, while there it was final.

*Smith* v. *Patten,* 6 *Taunt.,* 115, 1 *E. C. L. R.,* 330 (1815), holds that "where a defendant sued by a wrong name omits to plead in abatement and suffers the plaintiff to proceed to judgment, though he never has appeared to the wrong name, this court will not interfere to set aside the proceedings." In this case, however, it did appear that the plaintiff had addressed a letter to the defendant by the name of Joseph Patten, to which the defendant replied, promising payment of the debt and not complaining of any misnomer. The plaintiff sued him by the name of Joseph Patten, and served him with notice of the declaration, entered an appearance for him (which it appears from some of the cases was authorized by statute) signed interlocutory judgment and executed a writ of inquiry, the defendant during all these proceedings remaining wholly passive, having done no act to countenance them. The motion was to set aside the whole proceeding upon the ground that they were a nullity, the defendant's real name being John and not Joseph, and in support of it the case *Greenslade* v. *Prothero,* 2 *New R.,* 132, and *Cole* v. *Hindson, supra,* were cited. The counsel for the plaintiff rested his argument upon the fact that the defendant had misled the plaintiff by not noticing the misnomer in the letter addressed to him. "The court did not adopt the argument that the defendant by not noticing the misnomer had misled the plaintiff, but they decided on the ground that the defendant might have pleaded the misnomer in abatement, and that not having availed himself of that opportunity, he could not now come to set aside the proceedings. It would be of the worst consequence if defendants should be permitted, instead

of pleading in abatement, to lie by and increase expenses, and then to move to set aside the proceedings; they therefore refused to interfere." While it does appear by implication that this was an action to recover a debt, from defendant's answer to plaintiff's letter, "promising payment of the debt," yet it does not appear whether the debt was due by open account or by some instrument of writing signed by the defendant. It could hardly have been the latter, for if the debt was represented by a note or bond signed by the defendant, he could have been sued by the name signed, and if signed by his correct name John, it is barely possible that, with the paper before him, the plaintiff would have addressed him as Joseph.

*Griswold* v. *Sedgwick*, 6 *Cowen*, 456 (1826), holds: "If process against the body, out of any court, do not on its face authorize an arrest, it is void, and will not protect any person concerned in the arrest, even the officer to whom directed. Where Daniel S. Griswold was arrested on process of attachment, issued out of the equity side of the Circuit Court of the United States against Samuel S. Griswold: *held*, that an action of false imprisonment lay by Daniel S. Griswold against the marshal, his deputy, and the solicitors concerned in the arrest, and this, though Daniel S. Griswold was the person intended." This decision is rested on the ground that Daniel S. had not appeared in the action, for if he had, the decision would have been otherwise (citing *Cole* v. *Hindson*, 6 *T. R.*, 234; *Shadgett* v. *Clipson*, 8 *East.*, 328; *Wilkes* v. *Lorck*, 2 *Taunt.*, 400; *Scandover* v. *Warne*, 2 *Camp.*, 270; *Margans* v. *Bridges*, 1 *Barn. & Ald.*, 647); the court saying, upon the authority of Lord Kenyon in *Cole* v. *Hindson*, "that in *Crawford* v. *Satchwell*, 2 *Strange*, 1218, the defendant had appeared, and that the same remark might be made as to *Smith* v. *Bowker*, 1 *Mass.*, 76," which fact, however, does not appear in the report of either of the cases. The court also attempts to distinguish the case from that of *Reynolds* v. *Corp*, 3 *Caines Cas.*, 267, by the remark that in the latter case the court held that the judgment was not void, but voidable only, and that the sheriff should, therefore, have first applied to have the writ (which is supposed to have been issued in the wrong name) set aside.

*Guinard* v. *Heysinger*, 15 *Ill.*, 228 (1853), holds "that if a

party suffers a judgment to pass against him by the wrong name, he is estopped from availing himself of the misnomer in an action on that judgment." There is nothing in the case from which it can be discovered whether the defendant did or did not appear in the original action.

*Lafayette Ins. Co.* v. *French,* 18 *How.,* 404 (1855), was an action brought in Indiana on a judgment obtained in Ohio, and it appeared that the judgment had been recovered in Ohio against the company by an erroneous name; *held,* that "if the judgment was recovered in Ohio against the company by an erroneous name, but the suit upon the judgment was brought in Indiana against the company, using its chartered name correctly, accompanied with an averment that it was the same company, this mistake is no ground of error. It could only be taken advantage of by a plea in abatement in the suit in which the first judgment was recovered," &c. It is not distinctly stated that the defendant corporation did not appear to the action in which the judgment was recovered against it, in the Commercial Court of Cincinnati, in the state of Ohio, but it is plainly inferrible from what is said in the case, especially from the language of the second ground of objection to the introduction of the record of the Ohio judgment in these words: "Because said judgment record does not show or evidence the service of process upon this defendant as required by law, nor the appearance of this defendant by attorney or otherwise in said action or suit in said Commercial Court, and that said judgment, as a judgment, is therefore a nullity," &c. Of course, if the defendant corporation had appeared and pleaded to the action, this must have appeared in the record. It may be proper to explain also, that the service of process was made upon the agent of the company in Ohio under a law of that state which made it a condition of allowing foreign insurance companies to do business in the state, that they should have an agent there, upon whom process could be served. In delivering the judgment of the court, Mr. Justice Curtis uses this language: "The only question open here is, whether, if a mistake be made in the name of a defendant and he fails to plead it in abatement, the judgment binds him, though called by a wrong name. Of this we have no doubt. Evidence that it was an erroneous name

of the same person must therefore be admissible; otherwise a mistake in the defendant's name, instead of being assailable only by a plea in abatement, would render a judgment wholly inoperative."

*Barry* v. *Carothers*, 6 *Rich.*, 332 (1853), one of our own cases, was somewhat like the one just quoted, the principal difference being that in our case the alleged misnomer was in the name of one of the plaintiffs. This was also an action upon a judgment, which had been recovered in North Carolina by a co-partnership in the firm-name of J. H. Barry & Co. The defence was *nul tiel record:* that Andrew G. Gingles, one of the partners named as a plaintiff, was not the same person called Samuel G. Gingles in the original proceeding in which the judgment was obtained. In delivering the judgment of the court, Judge Wardlaw said: "A name is, however, but the designation of an individual. The judgment in North Carolina establishes the indebtedness to the plaintiff; no death, assignment, nor other change supervening that judgment, could be shown by the plaintiffs here, to maintain their action; and if proof, under proper allegations, that they are in fact the persons who recovered that judgment, should be held not to suffice for the plaintiffs here, the result would be that the defendant in an action on a judgment would make an impenetrable shield of a misnomer, which he waived in the first action when he failed to plead it in abatement."

In *Hammond* v. *People*, 32 *Ill.*, 473 (1863), it is said, upon the authority of *Ex parte Kellogg*, 6 *Vt.*, 511, "That matter in abatement, if there be notice to the defendant in fact, is waived if not pleaded, and cannot be assigned for error." This was said in a case where the party, whose name was Joseph Vacaro (an Italian), had been sued by the name of Joseph only. The right man was served, but made default, and judgment having gone against him, he was arrested under a *Ca. Sa.;* and this was a proceeding to obtain his discharge under the writ of *habeas corpus.* At page 472 it is said, after stating the facts as above: "What, under the circumstances, was it his duty to have done? It was to have appeared and pleaded the misnomer in abatement of the suit and give in his name in full."

*First National Bank of Baltimore* v. *Jaggers*, 31 *Md.*, 38 (1869), holds that "where a party is served by a wrong name,

and the writ is served on the party intended to be served and he fails to appear and plead the misnomer in abatement, and suffers judgment to be obtained by default against him in the erroneous name, he is concluded, and execution may be issued on the judgment in that name and.levied upon the property and effects of the real defendant." In the opinion of the court it is said: "There is no doubt that when a party is sued by a wrong name and he appears to the suit and does not plead the misnomer in abatement, and judgment is rendered against him in the erroneous name, execution may be issued upon it in that name and levied upon the property and effects of the real defendant; but there is some conflict in the decisions, whether the same result will follow if he does not appear and the judgment is obtained by default. The weight of authority, however, is that this makes no difference, and if the writ is served on the party intended to be served, and he fails to appear and plead in abatement, and suffers judgment to be obtained by default, he is concluded, and in all future litigation may be connected with the suit or judgment by proper averments."

The language just quoted is approved and incorporated into section 154 of *Freeman on Judgments*, which was cited in the beginning of this opinion. We agree that this view is sustained by the weight of authority, extending back certainly to the reign of George II. It is true that there are some New York decisions to the contrary, but it seems to us that they are not sustained by principle, and we do not see that the code should have any effect in that direction, section 194 of which provides that "the court may, before or after judgment, in furtherance of justice and on such terms as may be proper, amend any pleading, process, or proceeding by adding or striking out the name of any party or by correcting a mistake in the name of a party, or a mistake in any other respect; or by inserting other allegations material to the case," &c.

It is the judgment of this court that the judgment of the Circuit Court be reversed, and the case remanded for such further orders as may be necessary to carry out the conclusion herein announced.