(Decided 9th February, 1875.)

---

ISRAEL COOKE, and others *vs.* HARRIET COOKE.

*Removal for trial of a cause in Equity, not authorized by Sec. 8 of Art. 4 of the Constitution of 1867.*

Section 8 of Article 4 of the Constitution of 1867, provides that "the Judge, or Judges of any Court of this State, except the Court of Appeals, shall order and direct the record of proceedings in any suit or action, issue or petition, presentment or indictment, pending in such Court, to be transmitted to some other Court, (and of a different Circuit, if the party applying shall so elect,) having jurisdiction in such cases, whenever any party to such cause, or the counsel of any party shall make a suggestion in writing, supported by the affidavit of such party, or his counsel, or other proper evidence, that the party cannot have a fair or impartial trial in the Court, in which such suit or action, issue or petition, presentment or indictment, is pending, or when the Judges of said Court shall be disqualified under the provisions of this Constitution, to sit in any such suit, action, issue or petition, presentment or indictment; and the General Assembly shall make such modifications of existing law as may be necessary to regulate and give force to this provision." HELD:

That under the foregoing provision of the Constitution, an Equity cause cannot be removed for trial.

APPEAL from the Circuit Court for Baltimore County, in Equity.

The bill of complaint in this case was filed by the appellee who claimed to be a judgment creditor of the appellant,

Israel Cooke. Its object was to have a deed from the said Israel, and the appellant Arietta, his wife, to the appellant, Adolphus, their son, set aside ; and a deed from Joseph S. Cleaveland and wife, to the said Arietta, declared to be held in trust by her for the use and benefit of the said Israel and his creditors. The defendants, Israel and Arietta, severally made suggestion in writing, supported by affidavit, that they believed that they could not have a fair and impartial trial in the Circuit Court for Baltimore county, and prayed that the record of proceedings might be removed to a Court of some adjoining Circuit for trial. The Court, (YELLOTT, J.,) passed an order refusing the application for removal, and overruling and dismissing the motion. From this order the defendants appealed.

The cause was argued before STEWART, MILLER, ALVEY and ROBINSON, J.

*N. M. Pusey* and *Wm. Pinkney Whyte*, for the appellant.

By section 8 of Article 4 of the Constitution of 1867, it is made the duty of the Judge or Judges of *any* Court of this State, *except the Court of Appeals*, upon suggestion in writing, supported by affidavit, to order and direct the record of "proceedings in any *suit or action, issue or petition*, presentment or indictment" pending in such Court, to be transmitted to some other Court, &c.

Now, if the Judge of the Circuit Court of Baltimore county, sitting in equity, is the *Judge of any Court of this State*, except the Court of Appeals, (and we suppose this will not be questioned,) then, upon the filing of the suggestion for removal, supported by affidavit, it became his duty (*Kimball vs. Harman & Burch, et al*, 34 *Md.*, 401, 403,) to order and direct the record of proceedings to be transmitted, &c., unless the words "proceedings in any suit or action, issue or petition," as used in this section,

mean suit or action, issue or petition in a Court of Law, and not *also in a Court of Equity*, and there is certainly nothing in the section to warrant such a construction.

By comparing the 28th section of Art. 4 of the Constitution of 1851 with the 9th section of Art. 4, Constitution of 1864, it will appear that there is a very great difference in the phraseology of the two sections, and we submit, it will also become evident that it was the intention of the framers of the Constitution of 1864 to enlarge the right of removal. They gave it to any party to "*any suit or action, issue or petition*, presentment or indictment," and did not restrict it, as by the Constitution of 1851, to "all suits or actions *at law*, issues from the Orphans' Court, or from any Court sitting in equity," &c.

The fact that the framers of the Constitution of 1864, as well as those of the Constitution of 1867, excepted the Judges of the Court of Appeals *alone*, from the obligation to order and direct a record of the proceedings to be transmitted, &c., shows conclusively that they intended the *Judges of every other Court should do so*, (the other constitutional provisions having been complied with,) and they had established *Courts of Equity* as well as Courts of Law.

This Court has always given a liberal construction to these constitutional provisions, relative to the removal of cases. *Queen vs. Neale*, 3 *H. & J.*, 158; *Negro Jerry, et al. vs. Townshend*, 2 *Md.*, 274; *Griffin vs. Leslie*, 20 *Md.*, 15.

The right of removal is given to any party to "*any suit or action, issue or petition.*" A "suit" is the prosecution of some demand in a Court of Justice. *Cohens vs. Virginia*, 6 *Wheaton*, 407; *Weston, et al. vs. City Council of Charleston*, 2 *Peters*, 464; 3 *Story on Constitution, sec.* 1719.

And unless it can be successfully maintained that a Court of Equity is not comprehended in the term "a Court of Justice," then *suit* is as proper a designation of a proceeding in Equity as at law. The word *suit* is used by writers

on Equity Law as the proper designation of proceedings in Equity. *Story on Equity Pleading, sec.* 7, *ch.* 2, and is used in the same manner in *Art.* 16, of the Code.

The Court of Appeals has always used the word "suit" as applying to proceedings in both law and equity. In just such a case, being proceedings growing out of a bill in Equity, the Court say, "the corporation ought also to have been made a party to the *suit.* The bill does not allege that it has been dissolved, nor does it pray for a dissolution." *Fiery, et als. vs. Emmert, et al.,* 36 *Md.,* 475. It seems clear that "suit" is general in its character, and applies as well to "chancery suits" as "law suits." *Didier vs. Davison,* 10 *Paige Ch. Rep.,* 516, 517.

The words "issue" and "petition," when used as in this section of the Constitution without words to restrict their meaning, are as applicable to equity proceedings as to those at law.

An issue is a material point issuing out of the allegations or pleadings of the plaintiff and defendant. A cause is at issue in a Court of law when the parties have arrived at that stage of their pleadings, as that some specific point or matter is affirmed on the one side, and denied on the other. And a cause is at issue in a Court of Equity when the replication is in, and the pleadings are closed. *Story on Equity Pleading, sec.* 886; *Adams' Equity,* 347, *marginal.*

In both Courts a cause is at issue, or there is an *issue,* when some matter of fact or law is averred on the one side and denied on the other. A proceeding in a Court of Equity is commenced by "filing a bill which is in the nature of a *petition.*" So far as by the Act of 1868, ch. 180, the Legislature undertook to restrain or confine this constitutional right of removal of cases, that act is unconstitutional. *The State vs. Dashiell,* 6 *H. & J.,* 268; *Negro Jerry, et al. vs. Townshend,* 2 *Md.,* 274; *Griffin vs. Leslie,* 20 *Md.,* 15; *Price, et al. vs. Nesbitt, et al.,* 29 *Md.,* 263.

*Arthur W. Machen,* for the appellee.

MILLER, J., delivered the opinion of the Court.

The question presented by this appeal is whether an equity cause can be removed for trial, under the provision of the Constitution on that subject. That provision is (Cons. of 1867, Art. 4, sec. 8,) that "the Judge or Judges of any Court of this State, except the Court of Appeals, shall order and direct the record of proceedings in any suit or action, issue or petition, presentment or indictment pending in such Court, to be transmitted to some other Court, (and of a different circuit, if the party applying shall so elect,) having jurisdiction in such cases, whenever any party to such cause, or the counsel of any party shall make a suggestion in writing, supported by the affidavit of such party or his counsel, or other proper evidence, that the party cannot have a fair or impartial trial in the Court in which such suit or action, issue or petition, presentment or indictment is pending, or when the Judges of said Court shall be disqualified under the provisions of this Constitution to sit in any such suit, action, issue or petition, presentment or indictment; and the General Assembly shall make such modifications of existing law as may be necessary to regulate and give force to this provision."

The power of the Courts to remove a cause to an adjoining county for trial, when justice required it, existed at common law as an acknowledged, if not an essential part of their ordinary common law jurisdiction. *Price vs. The State,* 8 *Gill,* 311; *Negro Jerry vs. Townshend,* 2 *Md.,* 278. But the privilege has been secured and placed upon a more sure and certain foundation by constitutional provisions embodied in all our State Constitutions from 1806 to the present time. The object of these provisions, as of all laws, for the removal of causes from one venue to another is to secure a fair and impartial trial, and pro-

mote the ends of justice by getting rid of the influence of some local prejudice which might operate detrimentally upon the interests or rights of one or other of the parties to the suit. *Negro Jerry, et al. vs. Townshend,* 2 *Md.,* 278; *Wright vs. Hamner,* 5 *Md.,* 370 ; *Griffin vs. Leslie,* 20 *Md.,* 18. In this view the privilege is most undoubtedly a valuable one, and whenever it has come under consideration by the Courts it has been construed liberally to secure this object, and hence it has been held that under the power to provide " further remedies," and to "regulate and give force" to the provision, the Legislature may enlarge but cannot restrict the exercise of the right. *State vs. Dashiell,* 6 *H. & J.,* 268 ; *Price vs. Nesbitt,* 20 *Md.,* 18; 29 *Md.,* 266. These constitutional provisions have varied in some particulars, and the language employed to secure the right has been in some respects different. Thus in the Constitution of 1806 (Act of 1804, ch. 55, sec. 2,) the removal was to be to some Court "within the" judicial "district," and the suggestion for removal was required to be made before or during the term at which issue was joined. In that of 1851 (Art. 4, sec. 28,) the removal was to be "to the Court of an adjoining county," and in civil cases was confined to an adjoining county within the judicial Circuit, except as to the City of Baltimore where the removal may be to an adjoining county," and there was the same proviso as to the time when the suggestion was to be made. In that of 1864 (Art. 4, sec. 9,) the restriction as to the time of making the suggestion was dropped, and the limits of removal were enlarged " to some other Court in the same or any adjoining Circuit." But in that instrument there was a restriction upon the granting of the removal (which we take the liberty of saying our judicial experience subsequent to the Constitution of 1867 has shown to be a wise one,) viz: that the party asking the removal or his counsel should "make it *satisfactorily appear to the Court,*" that he cannot have in that Court a

fair and impartial trial of his case. In the present Constitution of 1867, the territorial limit of removal is extended to any Circuit in the State. (*Kimball vs. Harman, et al.*, 36 *Md.*, 401,) the discretion left in the Courts by the Constitution of 1864 taken away, and the duty to order the removal upon the suggestion of the party or his counsel made imperative as it was under the Constitutions of 1806 and 1851. *Griffin vs. Leslie*, 20 *Md.*, 18.

But apart from any restriction which the Constitution may impose, there are others growing out of the origin and nature of the right itself, and the end it seeks to attain, which necessarily limit the broad and comprehensive terms in which the right is granted. In construing the instrument the Courts have adopted such restrictions as necessarily attending the rightful exercise of the power, and in order that the administration of justice may not be thwarted or wholly defeated under color or pretence of exercising the right. Thus it has been held that as the object of the removal is to secure a fair and impartial trial, the removal must be made before the trial or any part of it is commenced in the Court ordering the removal, (8 *Gill*, 313,) and that the right can only be exercised by Courts exercising original and not appellate jurisdiction, and hence no removal could be made by a Circuit Court in a case pending before it on appeal, (*Hoshall vs. Hoffacker*, 11 *Md.*, 362,) and where the right has been once exercised there can be no second or subsequent removal at the instance of the same party, as that might defeat the object for which the right was granted, and tend to almost infinite delay, and the great oppression of witnesses. 8 *Gill*, 307 ; *State, use of County Commissioners vs. Gore, et al.*, 32 *Md.*, 498. In the case last cited, one of two defendants in an action at law had the case removed, and the other defendant then claimed the right to have it still again removed upon his suggestion, but we held that when a case was once removed at the

instance of one of several defendants, the right was exhausted as to all of them, and that the term "party" as employed in the Constitution when applied to civil causes where there can be no severance, must be taken in a collective and representative sense, and where there are more persons than one as plaintiffs or defendants, all applications to remove must be taken as made on behalf of all the persons constituting the "party," plaintiffs or defendants, as the case may be. "Any other construction," we said, "would work the greatest inconvenience, if not in many cases a total defeat of all trial; for if there should happen to be more individual defendants to a cause than there are judicial Circuits in the State, (a thing of not unfrequent occurrence,) and each defendant had a separate and consecutive right of removal, as is claimed in the present instance, by electing to remove to a different Circuit from that in which the cause might be at the time depending, as could be done, it is easily seen how justice could be defeated, and the whole judicial power of the State put at defiance by such a device. Certainly the framers of the Constitution" (and we may add the people who adopted it) "never contemplated a construction of the clause in regard to removal of causes that *could* lead to such a result;" and "seeing to what consequences the construction contended for leads, we cannot for a moment suppose it to be sound."

This reasoning applies with still greater force against a construction which would allow the removal of equity causes. In a suit at law all the plaintiffs and all the defendants have the same interest, the former to sustain, and the latter to defeat the action. But in equity proceedings it is not unfrequent that a defendant has a common interest with a complainant, and the interests of several defendants are often in direct conflict. It would therefore be difficult in such cases to put the construction upon the term "party," which we have placed upon it in reference to suits at law, and as the parties to equity causes are

usually, and especially in creditors' bills, very numerous, it not only might, but probably would frequently happen, upon the construction contended for by the appellants, that a cause would travel through all the Circuits of a State, and never be terminated. Again, in the case of a bill for an injunction, where the necessity for immediate action is pressing and imperative, a watchful defendant could interpose a suggestion for removal before the writ was ordered, and thus the right arm of every Equity Court in the State for the prevention of wrongs, might be paralyzed, wrong done and justice defeated. The same construction would also require the removal of every proceeding in the Orphans' Courts, and thus the administration of estates might be taken from the tribunals of the counties where the deceased lived and died, and where their property is, and removed to distant jurisdictions to the great delay and prejudice of those interested in the speedy administration of their assets. In the absence of plain words requiring it, we cannot adopt a construction that might lead to such results, and be fraught with such consequences.

It has been argued that as the terms used in the Constitution of 1806 and 1851, were "suit or action *at law*," and as the words "at law" are omitted from those of 1864 and 1867, the intention was, to extend the right of removal to proceedings in equity. But it must be observed, that in the Constitution of 1864, the restriction that it must be made satisfactorily to appear to *the Court*, that the party cannot have a fair and impartial trial, is wholly inconsistent with the idea that it applies to equity proceedings, for it would be absurd to submit to a Judge the determination of his own unfitness to try the cause or the existence of such a prejudice in his mind as would render him incapable of trying it fairly and impartially. The changes made by the Constitution of 1867, are the omission of this restriction, the extension of the territorial limits of removal, provided by the words "to some other Court," and

of a different Circuit, if the party applying shall so elect," and the provision for removal in cases of disqualification of the Judges which got rid of the system of special Judges, which had previously existed. But the dropping of the restriction referred to, and the omission of the words "at law," do not necessarily lead to the conclusion, it was the intention of the framers of the instrument, or of the people who adopted it, to embrace equity proceedings in this clause. Indeed, it would be novel, if not strange, to found a provision of this kind upon the assumption that the people would elect for themselves Judges unfit to discharge their duties, or with minds so infected with prejudice, as to be unable to render fair and impartial judgments in cases where they are in no wise connected with the parties, nor have been of counsel, and have no pecuniary interest. But however this may be, there certainly exists no necessity for the adoption of the construction insisted on, for an appeal lies from the judgment of every Equity Court upon questions *of fact* as well as of law, by which a corrupt, or prejudiced, as well as a mistaken judgment can be speedily corrected. Again, if a party mistrusts the judgment of the Court upon the facts, he may have issues framed and submitted to a jury for trial, and then if there be sufficient prejudice against him in the community, he may safely make the suggestion and affidavit, and have the case removed. For that the clause in question specially provides. But in case of jury trials the verdict upon the facts is, in this State, subject only to revision by the inferior Court upon motion for a new trial, which in our practice and under the rules of law governing that subject, is rarely granted; and hence a prejudiced jury may, by a verdict which cannot be set aside, inflict upon a party wrong and injustice. But still further, not only is there no language in the clause which plainly directs it to prejudice in the Judges, but, looking to the origin of the

right or power, we find it directed wholly to jury trials, and this, we think, has never been lost sight of or departed from in any of the Constitutional or legislative provisions on the subject. The object was to get rid of the influence of local prejudice in the community from which the jury to try the case was to come, and thus, as far as practicable, to secure a fair and impartial trial by jury. This purpose pervades all these provisions, and, as we have already said, we cannot, in the absence of plain terms forcing us to that conclusion, and in view of the possible consequences which we have pointed out, adopt the construction for which the appellants contend. The order appealed from will therefore be affirmed.

*Order affirmed.*

(Decided 9th February, 1875.)