ANNE ARUNDEL COUNTY, MARYLAND *v.*
LICHTENBERG ET AL.

[No. 42, September Term, 1971.]

*Decided November 12, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*John M. Court, Assistant County Solicitor,* with whom was *Paul F. Borden, County Solicitor,* on the brief, for appellant.

*Preston A. Pairo,* with whom were *Preston A. Pairo, Jr., Richard H. Pairo* and *Pairo & Pairo* on the brief, for Jerome M. Lichtenberg et ux., part of appellees. *B. Conway Taylor, Jr.,* with whom were *Ascanio S. Boccuti* and *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for other appellees.

FINAN, J., delivered the opinion of the Court.

This appeal is the second round in the controversy between Anne Arundel County and a real estate developer and his bonding companies over liability under a performance bond. The opinion in the first appeal is reported in *Lichtenberg v. Anne Arundel County,* 258 Md. 204, 265 A. 2d 222 (1970).

On October 22, 1968, Anne Arundel County (County) filed its original actions on two performance bonds of Mr. and Mrs. Jerome M. Lichtenberg (Lichtenberg), the developers of Michaelton Manor, for recovery of liquidated damages stipulated in subdivision agreements entered into between the County and Lichtenberg. The fil-

ing of the actions was accompanied with motions for summary judgment and supporting affidavits. Security Insurance Company of Hartford appears as the surety in one of the bonds while Fidelity and Deposit Company of Maryland is the surety in the other. These bonds were a prerequisite to the sale of subdivision lots under County law and called for specified payments of liquidated damages in the event that Lichtenberg failed to faithfully perform the obligations of the subdivision agreements between him and the County. Such a bond was also required as a condition precedent to approval of building permits to be issued for construction on property shown on a proposed subdivision plat submitted to the County by Lichtenberg.

The County's affidavits filed in support of its motions for summary judgment in each case averred that Lichtenberg had failed to complete by the dates specified in the agreements, or any other date, a substantial part of the improvements required to provide public access and storm drainage in the subdivision as approved, which improvements the health and welfare of county residents urgently required.

Lichtenberg and Security responded with general issue pleas and affidavits (in opposition to the motions for summary judgment) which alleged justification for nonperformance.

The issue thus joined, the matter was consolidated for trial and finally heard on the merits without a jury on July 15, 1969, at which time the court ruled from the bench in favor of the County, but allowed Lichtenberg's counsel to submit memoranda on the question of whether he was entitled to compensation for work allegedly done in the subdivision.

On August 13, 1969, after submission of the proposed memoranda, the court entered judgments in favor of the County for the full value of the liquidated damages stated in the bonds.[1] Subsequently, the cases were consolidated

---

1. A judgment for $14,500 was rendered on one bond and $5,400 on the other.

for the purpose of the appeal which was taken by Lichtenberg and his sureties.

On appeal, this Court (*Lichtenberg v. Anne Arundel County, supra*) neither affirmed nor reversed, but remanded with the following directive:

"We shall remand the case * * * for further proceedings during the course of which the Lichtenbergs and their sureties will be accorded an opportunity to establish by competent testimony the manner in which the roads were conveyed to and accepted by the County. It will then be possible for the Court to determine what effect, if any, such an acceptance may have had on the County's right to recover on the bonds." 258 Md. at 210.

On remand the matter was set down for trial in the Circuit Court for Anne Arundel County, however, Lichtenberg filed a suggestion for removal and the case was transferred to the Circuit Court for Howard County for trial. On receipt of the notice of the suggestion and order, the County filed a motion to vacate the order of removal which motion was, in our opinion, erroneously denied. The County properly noted an exception.

While the matter stood pending trial in Howard County, the County filed on July 29, 1970, a motion for a bill of particulars requesting Lichtenberg to "state specifically what acts or instruments executed by the County constitute the basis of the 'acceptance' of the work called for in the subdivision agreements dated July 21, 1965, and July 31, 1967, between Jerome M. Lichtenberg, et ux, and Anne Arundel County as alleged in * * * argument to The Court of Appeals of Maryland." No answer was filed to this motion until September 4, 1970, at which time Lichtenberg merely set forth grounds of exception to the motion for bill of particulars. Simultaneously, the County moved for judgment by default by reason of the failure of Lichtenberg to respond to the motion for the bill of particulars. No ruling was made

on the motion until the trial of the case on the merits, at which time it was denied.

The matter was heard on the merits before the Circuit Court for Howard County, Mayfield, J. presiding, on September 25, 1970. The lower court construed the subdivision agreements in the following light:

"The provisions of the agreements relating to default by the developer gave to the County (1) the right to refuse to take over and/or maintain the roads until completed, or (2) the right to enter into and upon said roads and construct said roads, the liability of the developer and the sureties to remain in effect. The agreements further provided that to enable the County to carry out those proceedings, should it so elect, the developer deliver to the County a fee simple deed for said roads which deed the County may accept at any time it may deem desirable. Obviously, the County elected to accept the deeds at the time they were recorded, namely, December 12, 1968. It is the view of this Court that the recording of the deeds was unnecessary for the purpose of permitting the County 'to enter into and upon said roads and to construct said roads'. While the testimony is somewhat in conflict as to the state of completion of the roads in July 1970, the testimony of Mr. Lichtenberg to the effect that the County had been using the roads stands undisputed and unrebutted, and while the testimony is undisputed that there had been no formal written acceptance of the roads by the County, this Court is led to the conclusion that such formality was waived by the recording of the deeds.
\* \* \*

This Court finds, therefore, as a matter of fact, based upon the testimony and evidence before it, that the recording of the deeds by the

County, having been unnecessary to enable the County to exercise the option available to it, and not having been induced by any act of Lichtenberg, constituted a valid conveyance to and acceptance by the County of the lands described in said deeds and the roads theretofore constructed thereon."

The County, in argument on appeal has viewed the theory on which the lower court decided the case as one of estoppel against the County, however, we do not think that it goes that far. Before discussing the lower court's opinion in further detail, more must be stated regarding the recording of the deeds to the roadways and easement areas in the subdivision in December of 1968. The fact of the acceptance and recording of the deeds had surfaced during argument before this Court in the first appeal and was not contained in the pleadings of record although the County and counsel for Lichtenberg both admitted this to be true.

On remand, evidence was adduced first by Lichtenberg and then by the County, on the issue of the defense of acceptance by deed. The deeds from Lichtenberg to the County were dated respectively July 21, 1965 and July 31, 1967, and were both recorded among the Land Records of Anne Arundel County on December 12, 1968, some six months prior to the trial on the original suits.

The County vigorously contends that the recording of the deeds from the developer did not constitute an approval or acceptance of his road construction in the subdivision. It argues that it had the prerogative to file the deeds in order to facilitate road construction or drainage construction which it sought to pursue in that portion of the subdivision which had become inhabited, and that the recording of the deeds did not in any way constitute a waiver of the conventional inspection and acceptance procedure followed by it with regard to public improvements.

As the case again returns to this Court, the primary

issue for review is the ruling by the lower court that the recording of the deeds to the roadways and easements in December of 1968 constituted a waiver by the County of any formal acceptance and approval of the road improvements and that the County was by this action precluded from any further remedy against Lichtenberg and his sureties for nonperformance of the subdivision agreements.

The lower court admitted that the testimony was in conflict as to the state of completion of the roads as late as July of 1970. Mr. Lohrman, County Public Works Supervisor, and Mr. Cook, County Inspector of Subdivisions, both testified that at the time of the recording of the deeds in December 1968 the road construction was only 50% completed. There was testimony offered by Lichtenberg which, while not directly contradicting the County's testimony, was to the effect that the County inspectors were satisfied with the way work was progressing in March of 1970. (Suits were originally filed by the County in October of 1968.)

A Mr. Latham, a registered surveyor working in the County for some 16 years, testified that he knew of no requirement by the County that the acceptance of roads by the County had to be in writing. The County countered this testimony with that of Mr. Warner, the Chief of the County's Inspection Division, who testified that the acceptance of roads had always been in writing. The final acceptance procedure as set forth in the specifications attached to the agreements entered into between the County and Lichtenberg incorporated the procedure followed by the Maryland State Roads Commission titled, "Abstracts From State Roads Commission Specifications for Material, Highways, Bridges and Incidental Structures" Section 10.05-18 "Final Acceptance" (January 1962). This calls for final acceptance in writing.

Mr. Frank, the Chief of the Right-of-Way Division of the County, and in charge of accepting road construction, testified that:

"* * * In connection with the particular case,

at the time that the developer executes an agreement with Anne Arundel County, Maryland for the construction of the roads in his subdivision, he places with the county a deed for said roadbeds which is held in escrow in the files of the Department of Public Works of Anne Arundel County until such time as written authorization is received from the inspections department of the county that the work covered by the subdivision agreement has been completed in accordance with the subdivision agreement. At that time, upon receipt of that notice, the developer is advised that he has to place a one year maintenance bond with the County to be held for one year from the date of the actual acceptance prior to the release of his surety bond and a recommendation by the Director of Public Works to the County Executive to accept the deed for the roadbeds."

We would also add that in the instant case the deeds, prior to recording, had been counter-signed by Joseph W. Alton, Jr., County Executive.

To ascertain the legal significance of the recording of the two deeds, we deem it most helpful to look to the language of the Public Works Agreement executed between the County and the developer. It should be noted that the agreements demonstrate that one of the reasons behind the requirement that the developer deliver an executed deed to the County of the right-of-way for the roads which he is constructing is to enable the County to have free access to the easement area to complete the construction work in the event of failure on the part of the developer to do so. In our opinion, it is clear from a reading of the agreements that it was not intended that the recording of the deeds was to be construed as an approval, acceptance or ratification of the completion of the developer's obligation under the contract.

The lower court in its opinion stated that it was not

necessary for the County to have recorded or officially accepted these deeds for it to have free and ready access to the easement area, should it have elected to have completed the roads with its own forces or by the use of a private contractor, as there was some evidence that the County had used these roads after the institution of these proceedings. However, we think it an unwarranted assumption that the County would have been acting prudently to have entered upon the easement area, had it so desired, to work on these roads without recording the deed of easement delivered to it. The record reveals that the County and the developer were at odds and we think the county solicitor may have been acting at his peril to have advised the County to enter upon the easement area without recording the deeds of easement in its possession.

In addition the record reveals that a portion of the subdivision had become inhabited and it is quite logical that the County may have intended the recording of the deeds of easement as a dedication of the easement and road area to public use and not as acceptance by it of the road and drainage improvements. We think it also significant that the subdivision agreement provides that the County may accept the developer's deeds "at any time it may deem advisable." Furthermore, there is nothing in the language of the subdivision agreement which attributes any special legal import to the act of accepting or recording the deeds of easement by the County.[2]

---

2. Excerpt from Public Works Agreement pertaining to the delivery of an executed deed to the roadway by the developer.
    "It is Understood and Agreed by the parties hereto that if the parties of the first part fail to construct the roads by the time specified in accordance with the plans and specifications and to convey the roadbeds and drainage easements as herein provided or shall otherwise fail to perform this agreement as herein set forth, the party of the second part shall have the right to refuse to take over and/or maintain said roads until completed or, at its option may enter into and upon said roads and to construct said roads and the parties of the first part, as well as the bond given to secure the due compliance of this agreement shall nevertheless remain liable to Anne Arundel County, Maryland, to the full amount thereof,

Additionally, we cannot agree with the rationale of the lower court that the recording of the deeds constitutes a waiver of the requirement that there be formal or written acceptance of the improvements after proper inspection by the County. As we have stated, in the case at bar, an acceptance or recording of a deed to a right-of-way and easement area, without more, does not constitute an acceptance of a completed road project which may traverse such right-of-way.

Moreover, this would not appear to be a case where the doctrine of equitable estoppel, which the courts are reluctant to apply to the acts of a political subdivision, would be appropriate, assuming, arguendo, the recording of the deeds had a greater legal significance than we are willing to attach to them. We state this because the record fails to reveal that Lichtenberg was led to act to his detriment as a result of the recording of the deeds by the County. See *Kent County v. Abel*, 246 Md. 395, 402, 228 A. 2d 247 (1967); and Pomeroy, *Equity Jurisprudence*, 5th Ed., Vol. 3, § 804, pg. 189.

Relating our interpretation of the lack of significance to be attributed to the recording of the deeds to Lichtenberg's obligations under the Public Works Agreement, we can only conclude that the recording of the deeds on December 12, 1968, had no bearing on his duty to complete performance and did not relieve him and his sureties of their obligations under the performance bonds.

In the normal course of events (but for the erroneous construction placed upon the recording of the deeds) it

---

which sum shall be construed to be liquidated damages, and further to enable the party of the second part to carry out the above provisions should it so elect, the parties of the first part have delivered to the party of the second part a fee simple deed with Special Warranty for said roads, streets, easements, structures and facilities which said properties the parties of the first part hereby warrant to be free of any liens or encumbrances and which said deed the said party of the second part may accept at any time it may deem desirable, and the parties of the first part do further warrant that they have not or will not encumber said roads, streets, easements, structures, and facilities.

would have been incumbent upon the lower court upon remand to have made a determination as to the state of completion of the roads and to have made a finding as to what liability, if any, developed upon Lichtenberg and his sureties. This would still be the primary purpose upon further remand of this case. Further proceedings may well present only abstract issues, as counsel for the County stated in oral arguments before this Court in the instant appeal, that as of the time of argument Lichtenberg had completed the work required under the contract. He proclaimed with refreshing candor that the County was now seeking judgment in its favor primarily so that the cost of litigation may properly be assessed against Lichtenberg. Indeed, few cases have acquired such a peculiar posture on appeal before this Court, as has the instant case. At such a time one is reminded of the admonition of Mr. Justice Frankfurter, that "Litigation is the pursuit of practical ends, not a game of chess." [3]

We are reluctant in the present case to rest with comfort upon the admissions of counsel made in argument before this Court, absent any supporting data in the record. For that reason we shall again remand this case for what we hope will be a final resolution of the equities between the County and Lichtenberg.

With regard to the issue of removal, we agree with the County's contention that the Circuit Court for Anne Arundel County erred in granting a removal of this cause to the Circuit Court for Howard County. As noted above, *Lichtenberg v. Anne Arundel County, supra,* was remanded to the trial court pursuant to Maryland Rule 871 a, without affirmance or reversal, for the purpose of taking additional testimony and not for the purpose of a new trial. We therefore regard this remand as an extension of the original proceedings, and consequently the appellee's suggestion for removal came too late. Judge

---

3. Indianapolis v. Chase Nat. Bank (1941), 314 U. S. 63, 69, 86 L. Ed. 48, 50, 62 S. Ct. 15.

Miller speaking for the court in *Cooke v. Cooke,* 41 Md. 362 (1875) stated:

> "Thus it has been held that as the object of the removal is to secure a fair and impartial trial, the removal must be made before the trial or any part of it is commenced in the court ordering the removal, * * *." 41 Md. at 368.

*Sittig v. Birkestack,* 38 Md. 158, 161 (1873) ; *DeFord v. State ex rel. Keyser,* 30 Md. 179, 197 (1869). Accordingly, we remand this case to the Circuit Court for Anne Arundel County from whence it should never have been removed.

> *Order reversed, case remanded to the Circuit Court for Anne Arundel County for further proceedings, appellees to pay costs.*