# NORTHWESTERN NATIONAL INSURANCE COMPANY *v.* WILLIAM G. WETHERALL, INC.

[No. 22, September Term, 1974.]

*Decided October 10, 1974.*

The cause was argued before SINGLEY, SMITH, DIGGES, ELDRIDGE and O'DONNELL, JJ.

*Patrick G. Cullen,* with whom were *Richard H. Lerch* and *Lerch & Huesman* on the brief, for appellant.

*Robert A. Sapero,* with whom were *Sapero & Sapero* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

This appeal is a sequel to *Northwestern N. Ins. Co. v. Wetherall,* 267 Md. 378, 298 A. 2d 1 (1972). In that case Northwestern National Insurance Company (Northwestern), appellant here and there, confessed an indebtedness of $20,167.00 to its judgment creditor, but said that "other attachments ha[d] been laid in its hands and others [were] claiming the amount due." We reversed the order of the trial court in which it had refused to strike the judgment of condemnation absolute, vacated the judgment of condemnation absolute, and remanded the case to the

Superior Court of Baltimore City for further proceedings, saying:

> "Northwestern, as garnishee, should be given the opportunity of which it has until now been deprived, to show that it cannot pay over to the appellee the credits it has of the judgment debtor because there are others that have a prior or superior claim to all or a portion of these funds. If Northwestern fails at this task, then will be the appropriate time to enter a judgment of condemnation absolute." *Id.* at 387.

The facts were all set forth by Judge Digges for the Court in the earlier opinion, but we shall recount some of them for a better understanding of this opinion.

Appellee and cross-appellant, William G. Wetherall, Inc. (Wetherall), obtained a judgment in the Circuit Court for Montgomery County on February 11, 1970, in the amount of $15,834.38 against Bethesda Welding Service, Inc. (Bethesda). Two days later, pursuant to the provisions of Maryland Rules 622, 623 and F1, an attachment was issued on this judgment returnable to the Superior Court of Baltimore City. It was laid in the hands of Northwestern on February 17, 1970, by service on the State Insurance Commissioner. Bethesda sued Northwestern on November 6, 1970, in the Circuit Court for Montgomery County, obtaining a judgment on February 4, 1972, in the amount of $20,167.00. Northwestern initially pleaded *nulla bona* to the attachment. It changed this on February 22, 1972, by what it styled "Amended Plea of Garnishee and Confession of Assets" in which it "confess[ed] that it [was then] indebted to the Bethesda Welding Service in the amount of $20,167.00," said "that other attachments ha[d] been laid in its hands and others [were] claiming the amount due to the said Bethesda Welding Service, Inc., on account of said Judgment," and that "the time for the filing of an appeal from the judgment . . . ha[d] not expired." On February 25, 1972, Northwestern asked leave to deposit this sum of $20,167.00 into the registry of the Circuit Court for

Montgomery County. It did this rather than make use of the provisions of Rule G 52 b which would have permitted its "pay[ing] into [the Superior Court of Baltimore City] the money in [its] hands to be awarded to the party having a legal right thereto."

Wetherall concedes that John J. Greer and Company, Inc., laid an attachment on judgment against Bethesda in the hands of Northwestern on March 6, 1970; that federal tax liens against Bethesda were recorded in the Circuit Court for Montgomery County on June 29, 1970, and November 3, 1970; that a notice of levy on those tax liens was served upon Northwestern on February 3, 1971; and that David Kayson and Glenn O. Hall, Jr., issued an attachment on their judgment against Bethesda which was laid in the hands of Northwestern on December 14, 1971.

Pursuant to orders of the Circuit Court for Montgomery County, there was paid on April 3, 1972, from the fund there deposited, to Messrs. Hall and Kayson $7,343.16; to Robert L. Hillyard, attorney for Earle M. Dupee, $4,423.80; and to George A. Chadwich, the sum of $350.16.[1]

On April 5, 1972, the motion of Northwestern to strike the judgment of condemnation absolute was denied. On the same day the Superior Court of Baltimore City passed an order granting leave to Northwestern to file an interpleader proceeding in that court within 30 days with an order that Wetherall should not execute on its judgment until after the determination of the rights of all interested parties in that interpleader proceeding. So far as the record shows, Northwestern has never filed such a proceeding in that court. After denial of Northwestern's motions for removal of the case to Montgomery County and for rehearing, an appeal was entered to this Court.

The first move by Northwestern on the remand was yet another attempt to remove the case to Montgomery County, which motion was denied. On April 11, 1973, the Circuit

---

1. The petitions filed in the Circuit Court for Montgomery County relative to these payments reflect judgments, but do not show any attachments, although it is conceded that Hall and Kayson did lay attachments in the hands of Northwestern.

Court for Montgomery County entered a decree of interpleader "with respect to the funds [previously] deposited by [Northwestern] in the Registry of the Court in the proceeding denominated Bethesda Welding Service, Inc., Plaintiff, v. Northwestern National Insurance Company, Defendant, law No. 31961." On June 15, 1973, that court refused to amend its decree as prayed by Northwestern to enjoin Wetherall from proceeding in its attachment proceeding in the Superior Court of Baltimore City.

The matter ultimately came on for hearing before Judge Joseph L. Carter. He determined that there were no claims on the attached funds superior to that of Wetherall. He then entered judgment of condemnation absolute in favor of Wetherall in the amount of $15,834.38. Both parties have appealed.

Northwestern claims (1) that the trial judge erred in determining that the claim of Wetherall is superior to that of, (a) the federal tax lien, (b) the attorneys for Bethesda Welding, and (c) those who have by order of the Circuit Court for Montgomery County obtained money from the funds deposited by Northwestern to satisfy their claims against Bethesda Welding; (2) that Northwestern satisfied its obligation to Bethesda and Wetherall by payment of the funds into the registry of the Circuit Court for Montgomery County and filing with that court an interpleader action; and (3) that the trial court abused its discretion in refusing to order the case removed to Montgomery County and in refusing to stay the proceedings pending a decision in the Montgomery County action. Wetherall complains that the trial judge erred in not allowing interest on its judgment up to the date of the judgment of condemnation. The latter point is the only one in which we perceive error.

I

## Priority of the Federal Tax Lien

The federal tax lien arises under the Internal Revenue Code of 1954, § 6321. By § 6323 (a) of that code "[t]he lien imposed by section 6321 shall not be valid as against any . . .

judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate." It was that notice which was filed on June 29, 1970, and November 3, 1970, after the attachment. In the battle between the U. S. Government and its citizens relative to the priority of lien claims it has been held that the competing lien, if choate, is superior to the federal tax claim or lien. If it is inchoate, however, it is inferior to that claim or lien. Whether the competing lien is choate is a federal question, although if by state law the lien is inchoate that determination will prevail. *United States v. Pioneer American Ins. Co.,* 374 U. S. 84, 83 S. Ct. 1651, 10 L.Ed.2d 770 (1963); *United States v. City of New Britain, Conn.,* 347 U. S. 81, 74 S. Ct. 367, 98 L. Ed. 520 (1954); and *United States v. Security Trust & Savings Bank,* 340 U. S. 47, 71 S. Ct. 111, 95 L. Ed. 53 (1950). *See* Annot., 94 A.L.R.2d 748 (1964). The latter states by way of summary:

"A lien is choate if it is specific and perfected. A lien is inchoate if it is not specific or is not perfected. A competing, nonfederal lien, to be perfected and choate, must be definite in three respects: (1) the identity of the lienor, (2) the property subject to the lien, and (3) the amount of the lien. To be choate, a lien must be definite at the critical date, and not merely ascertainable in the future by taking further steps. On the other hand, a lien is choate, or is specific and perfected, when nothing further need be done to make the lien enforceable.

"The various fictions by which a lien, when ultimately perfected, 'relates back' under state law to a time when some preliminary step was taken to create or enforce the lien, are not applicable in determining whether a lien was perfected and choate at the time a federal tax lien arose." *Id.* at 752.

*Cf. United States v. Eisinger Mill & Lumber Co.,* 202 Md. 613, 98 A. 2d 81 (1953). In that case federal tax liens were

entered prior to mechanics' liens, but after building commenced. Notwithstanding the provisions of what was then Code (1951) Art. 63, § 15 granting a priority to mechanics' liens over all liens attaching subsequent to the commencement of the building and § 23 providing for a lien though not recorded, the mechanics' liens were held junior to the federal tax liens. (Now Code (1974) §§ 9-107 (b) and 9-105 (e), Real Property Article.)

In *Dugan v. Missouri Neon & Plastic Advertising Company*, 472 F.2d 944 (8th Cir. 1973), the court was required to determine "the priority of a garnishment summons issued in aid of execution of a judgment as against a federal tax lien." The court referred to the criteria specified in *Pioneer* and *New Britian* for a choate lien and said that the lien of the judgment creditor it identified as "Tubelite satisfie[d] all requirements." It added:

> "First, Tubelite is clearly identified as the lienor, for it is both the judgment creditor and the garnisher. Second, as a judgment creditor, Tubelite does not have a definite interest in any specific personalty, but, as a garnisher, the property subject to the lien is all the personal property in Dugan's possession that Dugan owes to Told Brothers. Third, the amount of the lien is Tubelite's judgment debt imposed upon and limited to the amount that Dugan owes Told Brothers.

> "It could be argued that, at the time of garnishing Dugan, the existence of a debt or the exact amount of the debt (the auction proceeds) was not definite, and, therefore, the lien was not choate. Something more, the appearance of the garnishee in court and his admitting to a debt and the amount thereof, had to be done, and consequently the lien could be said to be inchoate. We would readily agree with this argument, if this case involved a garnisher who had not obtained a judgment. However, Tubelite does have a valid judgment. The exact amount of the judgment is known and

definite, and any amount of a garnishment serves to satisfy that judgment pro tanto.

"The purpose of the choateness doctrine is to preclude a state from announcing that certain liens can attach at some arbitrary time prior to a federal tax lien. United States v. New Britain, *supra*, 347 U.S. at 86, 74 S.Ct. 367. Arbitrariness is not present in this case. Tubelite had been a judgment creditor before the delivering of the garnishment summons and had diligently garnisheed Dugan before the Government acted. Further, as we have said above, Tubelite, by serving the garnishment summons, did all it could have done under state law to secure a lien on intangible property. Finally, [United States v.] Security [Trust and Savings Bank, 340 U.S. 47, 71 S. Ct. 111, 95 L. Ed. 53 (1950)], [United States v.] Liverpool [& London & Globe Ins. Co., 348 U.S. 215, 75 S. Ct. 247, 99 L. Ed. 268 (1955)], and United States v. Acri, 348 U. S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955), relied on by the Government, all involved non-judgment interests.

"Therefore, a garnishment summons in aid of execution of a judgment and on intangible property creates a choate lien so as to entitle that garnisher to the status of a judgment lien creditor who takes priority against a subsequently filed federal tax lien." *Id.* at 951-52.

A similar view has been taken in New York and Illinois, the New York procedure being that of serving subpoenas in supplementary proceedings to enforce a judgment, a procedure not to be confused with examination of persons other than a judgment debtor under oath permitted by our Rule 628 b. *United States v. Ruby Luggage Corp.*, 142 F. Supp. 701 (S.D. N.Y. 1954); *Davis & Warshow, Inc. v. S. Iser, Inc.*, 30 Misc. 2d 528, 220 N.Y.S.2d 818 (Sup. Ct., N.Y. Co. 1961); *Ryan Ready Mixed Con. Corp. v. Tallini Const. Corp.*, 23 Misc. 2d 547, 194 N.Y.S.2d 330 (Sup. Ct., Nassau Co.

1959); and *Marchant v. Artists Embassy, Inc.*, 25 Ill.App.2d 440, 446-47, 166 N.E.2d 311 (1st Dist., 3d Div. 1960).

With that, we turn to an examination of the Maryland authorities. Rule 622 pertains to execution. Rule 622 a provides that at any time within 12 years from the date of a judgment the court in which the judgment is entered "may issue an execution or attachment." Rule 622 h 4 states that "[a]n attachment on judgment shall be regarded as an execution within the meaning of [that rule]." In Rule 623 it is said that a plaintiff "having a judgment may, instead of any *other* execution, issue an attachment . . . ." (Emphasis added.)

In *Sharpless Separator Co. v. Brilhart*, 129 Md. 82, 86, 98 A. 484 (1916), our predecessors permitted an appeal when an attachment on a judgment was quashed, pointing out that "[i]f a *fieri facias* is quashed, so that property seized under it is released, there is an appeal." They quoted from *Baldwin v. Wright*, 3 Gill 241 (1845), in which case the Court said:

> "These proceedings were taken out by Wright, on a judgment obtained by him against Baldwin, and professed to be grounded on the 7th sec. of the Act of 1715, ch. 40, which authorizes an attachment, instead of any other execution, to issue on a judgment. This process, under this Act, is considered by the terms of the Act, as an execution, and in our judgment should be governed by the same principles." *Id.* at 246.

They likewise cited *Griffith v. Insurance Co.*, 7 Md. 102 (1854). In that case there was an appeal from the judgment of a magistrate to the Court of Common Pleas of Baltimore City. In the latter tribunal a judgment was recovered in the amount of $11.38 1/4. An attachment on the judgment was issued. The garnishee moved for an arrest of judgment after a trial in the attachment case for the reason "that the court had not *original* jurisdiction therein." Our predecessors explained that "the objection doubtless was, that the court had not power to order an attachment by way of execution upon its own judgment, because it was supposed that the

attachment was a new or original proceeding, and the sum upon which it issued being below the jurisdiction of the court, no such action could be taken over the subject." In holding this view not correct, the Court cited *Baldwin v. Wright, supra,* and said:

> "It follows, therefore, from what we have said, that as every court has power to enforce its own judgments by issuing execution thereon, and as this attachment was an execution, it was properly issued.
>
> "The language of the Act of 1715, chap. 40, sec. 7, *that any person having obtained a judgment in any court of this Province may take out an attachment by way of execution,* is certainly comprehensive enough to authorize the Court of Common Pleas to issue an attachment upon a judgment rendered upon appeal from a magistrate's decision, such judgment thereby becoming a judgment of the appellate court." *Id.* at 103-04. (Emphasis in original.)

To like effect *see Gorn v. Kolker,* 213 Md. 551, 553, 133 A. 2d 65 (1957), and 2 Poe, *Pleading and Practice* §§ 584C, 689 (5th ed. Tiffany 1925).

There is language in the Maryland cases which speaks of the laying of an attachment as creating an inchoate lien which becomes perfected and is rendered effectual by a judgment of condemnation. In fact, in the earlier round of this bout we said in referring to an attachment:

> "This inchoate lien becomes consummate with the entry of a judgment of condemnation absolute." 267 Md. at 384.

Without clarification or explanation, this would appear to make the attachment lien junior to the federal tax lien. We did not stop there, however. We went on to explain:

> "Under the established law of this State, a garnishment proceeding is, in essence, an action by

the defendant (judgment debtor) against the garnishee for the use of the plaintiff (judgment creditor). *Bendix Radio Corp. v. Hoy,* 207 Md. 225, 229, 114 A. 2d 45 (1955). This proceeding generally brings to a test whether the garnishee has in his hands funds, property or credits for which the debtor would himself have a right to sue. *Walsh v. Lewis Swim. Pool Constr.,* 256 Md. 608, 610, 261 A. 2d 475 (1970)." *Id.* at 384-85.

It is further explained in W. Hodge and R. McLane, *Law of Attachment in Maryland* § 251 (1895), citing *First National Bank v. Jaggers,* 31 Md. 38 (1869):

"As to the *defendant,* it is final process, but as to the garnishee, it is in the nature of *mesne* process. The garnishee must be notified of the attachment on judgment and has the right to appear and contest the condemnation." *Id.* at 208-09. (Emphasis in original.)

Those authors further state in § 252:

"In general, the practice and pleadings under a writ of attachment on judgment are the same as in other cases of attachments, except that the judgment against the defendant, on which the attachment issues, conclusively settles the liability of the defendant, and consequently there is no short note or short note case; and the sole question open for consideration under the attachment case is, whether the property attached belongs to the defendant, or the garnishee has funds of the defendant liable to attachment." *Id.* at 209.

This view is further amplified in *Jaggers:*

"The appellant's fifth prayer asserts that as Lounsbury applied for the benefit of the Bankrupt Law on the 27th of February, 1868, the plaintiff could not recover for any funds which came to the hands of the garnishee within four months next

preceding that date. This prayer is founded on that clause in the 14th section of the Bankrupt Act, which vests all the property of the applicant in the assignee, 'although the same is then attached on *mesne process* as the property of the debtor,' and declares the assignment 'shall dissolve *any such* attachment *made* within four months next preceding the commencement of' the proceedings in bankruptcy. Without attempting to define the meaning of the terms, 'attachment made,' as here used, we are clearly of opinion this clause refers to writs of attachment when used as *mesne,* and not as *final* process. By our law (Code, Art. 10, sec. 30) the plaintiff in a judgment may, '*instead of any other execution,*' issue an attachment thereon against the lands, tenements, goods, chattels, and credits of the defendant. The writ, when so issued, is placed on the same footing, performs the same office, and is governed by the same rules as a *fi. fa. Griffith v. Aetna Ins. Co.,* 7 Md. 102; *Boyd v. Talbott,* [7 Md.] 404. This is *final,* and not *mesne* process." *Id.* at 48-49. (Emphasis in original.)

*See also* 2 Poe, *op. cit.* §§ 693-94.

The federal tax lien could not be a lien on credits due from Northwestern to Bethesda unless there were in fact such credits due. This is the subject of the inquiry in the garnishment action and it is because of this that the Maryland courts have spoken of the attachment lien's being inchoate until the judgment of condemnation is entered, then becoming choate and relating back. Accordingly, in the light of the holding in *Dugan,* the holding in other states in similar situations, and the clear Maryland history from 1715 that an attachment on judgment is a form of execution, we hold that the garnishment laid in the hands of Northwestern took priority over the tax lien of the Federal Government.

## II

### Lien for Attorney's Fees

The sum paid to Messrs. Hall and Kayson, for which they had previously obtained judgment, represented their contingent fee of one-third of the sum obtained in the suit they brought on behalf of Bethesda against Northwestern. Northwestern's brief indicates that these attorneys laid an attachment in the hands of Northwestern in December, 1971, subsequent to this attachment. If there has been a judgment of condemnation, that fact does not appear.

It is argued by Northwestern that "attorneys have a preferred claim for their attorneys' fee in a fund which the attorneys created by their labor," that "there was an equitable assignment of the funds to the extent of counsels' fee at the time the judgment on behalf of Bethesda Welding against Northwestern was obtained" ; that "counsels' claim is superior because when counsels' attachment was laid in December, 1971 Northwestern did owe Bethesda a sum certain but that was not true earlier in February, 1970 when Wetherall's attachment was laid," and "that the attorneys' claim is superior because it has been satisfied by order of court. The attorneys have their money, like a bird in hand, they claim their position is superior to Wetherall whose claim is twice as large and, in a manner of speaking, is still 'in the bush.' "

The first two contentions on behalf of the attorneys may be summed up as a claim that they as attorneys have a charging lien. We held in *Campen v. Talbot Bank of Easton*, 271 Md. 610, 319 A. 2d 125 (1974), that there is no such lien in this State.

The third argument ignores what 2 Poe, *op. cit.* § 530 calls "[o]ne of the leading characteristics of the remedy by attachment in Maryland," namely "that it operates to affect not only all property, effects and credits of the debtor in the hands of the garnishee *at the time of the service of the writ,* but also all that may come into his hands at any time after laying the attachment and down to the trial; and it is this

peculiarity which gives to the remedy a large measure of its effectiveness . . . ." (Emphasis in original.) To like effect see *Bedding Co. v. Warehouse Co.*, 146 Md. 479, 488-91, 126 A. 902 (1924); *Nicholson v. Crook*, 56 Md. 55 (1881), and cases cited in each.

The fourth argument is equally without merit and will be disposed of under the next heading with others similarly situated.

## III

### The Deposit of Funds, the Interpleader and the Payees Under Court Order

No authority has been cited to us for permitting the deposit into the registry of the Circuit Court for Montgomery County of the amount of the judgment of Bethesda against Northwestern. This is not comparable to a payment under Rule 325 prior to judgment. The initial petition of Northwestern for permission to pay into court was not an action for interpleader. Northwestern could not by this payment into court cut off the rights which had accrued to Wetherall under its attachment action. If Northwestern had genuine doubt about priorities of claims, then under Rule G 52 b it could have paid the amount of Bethesda's judgment into the registry of the Superior Court of Baltimore City in the attachment action "to be awarded to the party having a legal right thereto." As long ago as 1827 Chancellor Bland pointed out in *Chase v. Manhardt*, 1 Bland 333 (1821, 1827), that if an attachment were laid in the hands of a judgment debtor and he wished to cut off the running of interest, then he should deposit that sum in court in the attachment proceeding, stating:

> "The positive provisions of our Attachment Act, 1715, ch. 40, s. 4, looks to and evidently sanctions this right or duty of the garnishee to bring the sum attached into Court for the purpose of relieving himself from further responsibility and trouble. He may contest the claim made against him; but, if he

does so, the Act declares he shall be liable to costs; — whence it clearly follows, that by assuming the position of a litigating debtor he would, as in all other similar cases, be also chargeable with interest upon the debt. A garnishee may not only defend his own interests, as a mere neutral in the controversy between the plaintiff and defendant; but he may also assume upon himself the character of an ally of the defendant. He is allowed to plead and defend his rights for him, and in his behalf. 1795, ch. 56, s. 4; *Wilson v. Starr*, 1 *H. & J.* 491. But if he thus contests the plaintiff's right to recover either as principal or ally in the controversy, the genius of our law, as well as the reason and justice of the case seem most strongly to require, that he should be held answerable for the delay, and be charged with interests and costs." *Id.* at 344.

It is said in 2 Poe, *op. cit.* § 531:

"[W]hile the effect of garnishment is not to put an end to or interfere with or impair any valid pre-existing or subsisting contract between the garnishee and the debtor, or the rights and obligations arising therefrom, it is not in the power of the garnishee, by any act of his, subsequent to the garnishment, to impair the rights of the attaching creditor." *Id.* at 507.

The interpleader action did not attempt to have determined who was entitled to the proceeds of the judgment held by Bethesda against Northwestern, but it sought to have determined the ownership of the funds deposited in court without authority under statute or rule from which disbursements had been made to the point that there was not left a sum sufficient to satisfy the indebtedness of Bethesda to Wetherall.

It can readily be seen that if the device adopted by Northwestern here were to be permitted to cut off the claims of an attaching creditor who stood first in line, then

a garnishee friendly to junior creditors could wreak havoc with established procedures. Accordingly, we hold under the facts of this case that the deposit in the registry of the Circuit Court for Montgomery County, the interpleader action, and the payment of funds from the sum deposited to certain creditors of Bethesda are in no way a bar to the claim of Wetherall in this attachment proceeding.

## IV

### Removal

The right of removal which Northwestern here sought to exercise was not its constitutional right of removal under Rule 542. It has never claimed it could not obtain a fair trial in Baltimore City. It was seeking removal so that "the case [might] be consolidated with pending cases," described in its motion, "in order to save a substantial amount of the time of [the] Court." It had an alternate prayer that the proceedings might be stayed pending decision on the matters then before the Circuit Court for Montgomery County. We remanded the case to the Superior Court of Baltimore City for a determination by that court as to whether there were or were not creditors of Bethesda with "a prior or superior claim to all or a portion of these funds." It strikes us that the matter could have been decided while Northwestern was sparring around seeking, for what reason we do not know, to have the issue determined by a Montgomery County judge rather than a Baltimore City judge. Northwestern will not here be heard to complain since no constitutional right was violated. In fact, the case in some ways reminds us of *Anne Arundel County v. Lichtenberg,* 263 Md. 398, 283 A. 2d 782 (1971). We had remanded that case to the trial court under Rule 871 a, without affirmance or reversal, as Judge Finan put it for the Court, "for the purpose of taking additional testimony and not for the purpose of a new trial." We held the removal on the remand to be in error, since "the object of the removal is to secure a fair and impartial trial" and a request made after trial started was too late, the proceedings on the remand being an extension of the original proceedings.

## V

## Interest

Rule 642 provides that a "judgment on verdict shall be so entered as to carry interest from the date on which the verdict was rendered," which has been uniformly inferred in this State to be the legal rate. *Paape v. Grimes*, 256 Md. 490, 494, 260 A. 2d 644 (1970). Accordingly, interest continues to accrue on the judgment of Wetherall against Bethesda and on the judgment of Bethesda against Northwestern until paid. The claim of Wetherall cannot be satisfied until interest is paid in full. Therefore, the judgment of condemnation entered should have included interest on Wetherall's judgment against Bethesda until the date of the judgment of condemnation, the sum due Wetherall on its judgment against Bethesda being less than the sum due from Northwestern to Bethesda. This is in accordance with the holding of this Court relative to cases on bonds or contracts to pay money on a day certain and cases where the money has been used. *See Charles County Broadcasting v. Meares*, 270 Md. 321, 332, 311 A. 2d 27 (1973); *Atlantic States v. Drummond & Co.*, 251 Md. 77, 85, 246 A. 2d 251 (1968); *Affiliated Distil. v. R. W. L. Co.*, 213 Md. 509, 516, 132 A. 2d 582 (1957); *Baltimore City Pass. Ry. v. Sewell*, 37 Md. 443, 452 (1873); and *Newson v. Douglass*, 7 Har. & John. 417, 453 (1826). The judgment in Wetherall's favor will, of course, include costs.

The action here is in no way intended to bar payment for the sums in the registry of the Circuit Court for Montgomery County to Wetherall on account of its judgment.

> *Judgment vacated and case remanded for entry of a judgment in accordance with this opinion; costs to be paid by Northwestern National Insurance Company.*